**STEIN et al. v. BENADERET et al.**

**No. 11119.**

United States District Court
E. D. Michigan, S. D.

Dec. 23, 1952.

Marco & Marco, Detroit, Mich., Bair, Freeman & Molinare, Chicago, Ill., for plaintiff.

Max Richard Kraus, Chicago, Ill., Max H. Horwood, Detroit, Mich., for defendant.

PICARD, District Judge.

This action involves the question of demarcation between the efficacy of copyrights and design patents.

#### Statement of Facts

The pertinent facts are not in dispute. Plaintiffs, husband and wife, doing business as a partnership, are engaged in the business of manufacturing lamps in California. The wife is an artist and originally the firm manufactured only statuettes but during all of the period the articles in controversy were designed and copyrighted plaintiffs have been exclusively in the business of manufacturing lamps, with supporting standards having the dominant theme of a male or female figure as a base, with graceful lines, varying in appearance and usually entitled as a Ballet, Harlequin, Casbah, Egyptian or Free dancer, model. A copyright was obtained for each new figure and while the copyright covered the statuette only, it is admitted that the designed article was intended for and used as the base for a lamp. In fact, plaintiffs have manufactured almost 20,000 of these lamps but only 5 statuettes have been sold as such. It is also well to note that those five sales were all to the same person and were made following a legal decision in which the court referred to the fact that plaintiffs had sold none of their product as statuettes. See E. I. Horsman & Aetna Doll Co. v. Kaufman, 2 Cir., 286 F. 372. So it is obvious—and we find—that it was not art in the form of a statuette that plaintiffs were promoting—nor was it intended to be the reason why it was originally designed. On the contrary, we find that the utilitarian purpose of an attractive base for

a lamp was the prime and controlling importance.

Defendants have admittedly copied plaintiffs' works of art practically in every detail. Where there are differences they are minor as in some article of dress or color, but there is no doubt that defendants intended and have taken advantage of the appeal of plaintiffs' work and whatever commercial value may have resulted during the comparatively short time plaintiffs have been in operation. Others have also been attracted to plagiarize plaintiffs' idea and the exact question involved in this case has been answered or is now being debated in the courts.

However, there is one difference by which plaintiffs hope to succeed here where they did not in other suits. In this case the Register of Copyrights has by deposition sworn that one is entitled to a copyright and its protection even though the work of art was intended to be utilitarian in purpose and not limited to display for its cultural and entertaining qualities.

## Conclusions of Law

One case in particular plagues plaintiffs because the exact question was presented in Stein v. Expert Lamp Co., 7 Cir., 188 F.2d 611, where the district court in effect held that this was a copyright that should never have been issued. The court of appeals held that neither the copyright laws nor regulations so permitted; that the article in question was a work of art designed to be used as a lamp base and therefore plaintiffs should have protected themselves by a design patent where the Bureau of Patents would have made the necessary search and comparisons with prior art. When the Stein v. Expert Lamp Co., supra, opinion was first published by Judge La Buy in the district court it was open to objection that the court had misunderstood the facts; that he was under the impression that when the statuettes were presented to the Copyright Office they displayed wires and sockets attached thereto so that it was apparent right from the beginning that they were to be used as lamp bases. However, this mistake was rectified before the matter reached the court of appeals after plaintiffs had

directed the district court's attention to his alleged error and who then ruled that it was immaterial whether the article copyrighted had wires or sockets since it was obviously intended to be used for a lamp base. The Supreme Court of the United States denied certiorari.

In our opinion this case substantiates defendants' position in every particular; to-wit, it is the intent and purpose that is important. Such a conclusion, we hold, but follows the regulations of the Copyright Office:

"This class includes works of artistic craftsmanship, in so far as their form but not their mechanical or utilitarian aspects are concerned, such as artistic jewelry, enamels, glassware, and tapestries as well as all works belonging to the fine arts, such as paintings, drawings and sculpture. * * *" Title 17 U.S.C.A., following section 207, Rules and Regulations, § 202.8, Works of Art (Class G), (a), In general.

However, in Stein v. Rosenthal, 103 F. Supp. 227, a California district court, Judge Tolin reached what is apparently a different conclusion. The Rosenthal case was decided about six months after Stein v. Expert Lamp Co., supra, and may be distinguished for one reason: evidently Judge Tolin's attention had not been directed to the fact that both Judge La Buy and the 7 Circuit had knowledge that the Stein statuettes submitted to the copyright office did not include projecting lamp stubs. If this distinction does not appeal and viewed in toto, Judge Tolin's decision is directly opposed to Expert, supra, for on page 230 of 103 F.Supp. you find this very significant language:

"Copyright protection is not reserved exclusively to proprietors who do not intend to earn money by commercialization of their art."

indicating that Judge Tolin was not concerned with the purpose for which the statuettes were made.

It is also well to bear in mind that while the Register of Copyrights testified that it was the "practice of the Copyright Office" to register claims for copyright of any

work which it considered "art" even though such work had a mechanical or utilitarian aspect, such conclusion is contrary to its 1926 regulations (supra).

. In this connection attention is directed and emphasis made to the words "utilitarian in purpose" therein because while the regulations do state that after registration in the Copyright Office such art may then be utilized for articles of manufacture, this does not mean that the primary purpose of the article may be utilitarian as in the case at bar. If so one could very easily circumvent the entire design patent law. As the court stated in Stein v. Expert Lamp Co., D.C., 96 F.Supp. 97, 98:

"A thing which is intended solely to be put to practical use cannot be copyrighted."

Plaintiffs also strenuously insist that for this court to hold contrary to their contention it is necessary for us to overrule the established practice of the Copyright Office of years' standing. Whether or not this is true is immaterial. In the much quoted Great Atlantic & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, 95 L.Ed. 162, case what the Patent Office considered essential to make a combination device patentable received a severe setback and even the prior holdings of our courts on what was or was not a patentable combination were placed in a questionable category. Since that case it is more difficult to sustain a patent based on combination.

A design patent must also meet certain rigid requirements. Examination and search of the records is mandatory and when a patent is granted the patentee has protection and a monopoly for years. There is no such search or examination when a copyright is secured. It issues almost automatically and there is no prior art to contend with.

As stated in Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841:

"To give to the author of the book an exclusive property in the art described therein, when no examination of its novelty has ever been officially

made, would be a surprise and a fraud upon the public. That is the province of letters-patent, not of copyright. The claim to an invention or discovery of an art or manufacture must be subjected to the examination of the Patent Office before an exclusive right therein can be obtained; and it can only be secured by a patent from the government."

While plagiarism in any form is to be deplored and certainly not condoned or encouraged, we are concerned here not with one's sense of fairness, but with the law. If plaintiffs desired the protection they now claim, they should have submitted to the rigid scrutiny of the Patent Office and applied for a design patent.

We therefore hold for defendants.