MAZER ET AL., DOING BUSINESS AS JUNE LAMP
MANUFACTURING CO., *v.* STEIN ET AL.,
DOING BUSINESS AS REGLOR OF
CALIFORNIA.

No. 228.   Argued December 3, 1953.—Decided March 8, 1954.

*Max R. Kraus* and *Robert L. Kahn* argued the cause
and filed a brief for petitioners.

*George E. Frost* argued the cause for respondents. With him on the brief were *Will Freeman* and *Charles F. Barber.*

By special leave of Court, *Benjamin Forman* argued the cause for the Register of Copyrights, as *amicus curiae,* urging affirmance. With him on the brief were *Acting Solicitor General Stern, Assistant Attorney General Burger* and *Paul A. Sweeney.*

MR. JUSTICE REED delivered the opinion of the Court.

This case involves the validity of copyrights obtained by respondents for statuettes of male and female dancing figures made of semivitreous china. The controversy centers around the fact that although copyrighted as "works of art," the statuettes were intended for use and used as bases for table lamps, with electric wiring, sockets and lamp shades attached.

Respondents are partners in the manufacture and sale of electric lamps. One of the respondents created original works of sculpture in the form of human figures by traditional clay-model technique. From this model, a production mold for casting copies was made. The resulting statuettes, without any lamp components added, were submitted by the respondents to the Copyright Office for registration as "works of art" or reproductions thereof under § 5 (g) or § 5 (h) of the copyright law,[1] and certifi-

---

[1] 17 U. S. C. (Supp. V, 1952) § 4:

"The works for which copyright may be secured under this title shall include all the writings of an author."

*Id.,* § 5:

"The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

.      .      .      .      .

"(g) Works of art; models or designs for works of art.
"(h) Reproductions of a work of art."

Errors of classification are immaterial. See note 19, *infra.*

cates of registration issued. Sales (publication in accordance with the statute) as fully equipped lamps preceded the applications for copyright registration of the statuettes. 17 U. S. C. (Supp. V, 1952) §§ 10, 11, 13, 209; Rules and Regulations, 37 CFR, 1949, §§ 202.8 and 202.9. Thereafter, the statuettes were sold in quantity throughout the country both as lamp bases and as statuettes. The sales in lamp form accounted for all but an insignificant portion of respondents' sales.

Petitioners are partners and, like respondents, make and sell lamps. Without authorization, they copied the statuettes, embodied them in lamps and sold them.

The instant case is one in a series of reported suits brought by respondents against various alleged infringers of the copyrights, all presenting the same or a similar question.[2] Because of conflicting decisions,[3] we granted certiorari. 346 U. S. 811. In the present case respond-

---

[2] An unreported action, *Stein* v. *Zuckerman and DuBeshter*, was pending in the Eastern District of New York. Note, 66 Harv. L. Rev. 877, 878, n. 8. We are advised that it was dismissed by consent February 24, 1953.

[3] *Stein* v. *Expert Lamp Co.*, 188 F. 2d 611. *Stein* v. *Expert Lamp Co.*, 96 F. Supp. 97, was the first action brought. Through an accident in presentation, the trial court determined the case as though the copyright was on a statuette with lamp attachments. It held the statuettes not copyrightable because this "was evidence of the practical use" intended. *Id.*, at 98. On petition for reconsideration, it held the presence or absence of the attachments immaterial. *Stein* v. *Mazer*, 111 F. Supp. 359, 361; *Rosenthal* v. *Stein*, 205 F. 2d 633, 634. The Court of Appeals for the Seventh Circuit affirmed on the ground that the Copyright Act "does not refer to articles of manufacture having a utilitarian purpose nor does it provide for a previous examination by a proper tribunal as to the originality of the matter offered for copyright . . . ." *Stein* v. *Expert Lamp Co.*, 188 F. 2d 611, 613.

*Stein* v. *Rosenthal*, 103 F. Supp. 227, was a second infringement case. It was there held "Protection is not dissipated by taking an unadulterated object of art as copyrighted and integrating it into commercially valuable merchandise." *Id.*, at 230. On appeal, the Court

ents sued petitioners for infringement in Maryland. *Stein* v. *Mazer,* 111 F. Supp. 359. Following the *Expert* decision and rejecting the reasoning of the District Court in the *Rosenthal* opinion, both referred to in the preceding note, the District Court dismissed the complaint. The Court of Appeals reversed and held the copyrights valid. *Stein* v. *Mazer,* 204 F. 2d 472.[4] It said: "A subsequent utilization of a work of art in an article of manufacture in no way affects the right of the copyright owner to be protected against infringement of the work of art itself." *Id.,* at 477.

Petitioners, charged by the present complaint with infringement of respondents' copyrights of reproductions of their works of art, seek here a reversal of the Court of Appeals decree upholding the copyrights. Petitioners in their petition for certiorari present a single question:

"Can statuettes be protected in the United States by copyright when the copyright applicant intended primarily to use the statuettes in the form of lamp

---

of Appeals for the Ninth Circuit affirmed, saying "The theory that the use of a copyrighted work of art loses its status as a work of art if and when it is put to a functional use has no basis in the wording of the copyright laws and there is nothing in the design-patent laws which excludes a work of art from the operation of the copyright laws." *Rosenthal* v. *Stein,* 205 F. 2d 633, 635.

In *Stein* v. *Benaderet,* 109 F. Supp. 364, 365, a district court of Michigan held that it is the "intent and purpose" of the designer which determines whether an object is copyrightable as a work of art. The court said plaintiffs should have applied for a design patent and held for defendants. An appeal is pending now in the Court of Appeals for the Sixth Circuit.

The opinions in the above cases and those of the District Court and the Court of Appeals in the present litigation deserve careful reading.

[4] In this case the Register of Copyrights participated as *amicus curiae* and supported respondents. Through the Solicitor General he has also filed a brief in this Court, and participated in the oral argument. 346 U. S. 882.

bases to be made and sold in quantity and carried the intentions into effect?

"Stripped down to its essentials, the question presented is: Can a lamp manufacturer copyright his lamp bases?"

The first paragraph accurately summarizes the issue. The last gives it a quirk that unjustifiably, we think, broadens the controversy. The case requires an answer, not as to a manufacturer's right to register a lamp base but as to an artist's right to copyright a work of art intended to be reproduced for lamp bases. As petitioners say in their brief, their contention "questions the validity of the copyright based upon the actions of the respondents." Petitioners question the validity of a copyright of a work of art for "mass" production. "Reproduction of a work of art" does not mean to them unlimited reproduction. Their position is that a copyright does not cover industrial reproduction of the protected article. Thus their reply brief states:

"When an artist becomes a manufacturer or a designer for a manufacturer he is subject to the limitations of design patents and deserves no more consideration than any other manufacturer or designer."

It is not the right to copyright an article that could have utility under §§ 5 (g) and (h), note 1, *supra,* that petitioners oppose. Their brief accepts the copyrightability of the great carved golden saltcellar of Cellini but adds:

"If, however, Cellini designed and manufactured this item in quantity so that the general public could have salt cellars, then an entirely different conclusion would be reached. In such case, the salt cellar becomes an article of manufacture having utility in addition to its ornamental value and would therefore have to be protected by design patent."

It is publication as a lamp and registration as a statue to gain a monopoly in manufacture that they assert is such a misuse of copyright as to make the registration invalid.

No unfair competition question is presented. The constitutional power of Congress to confer copyright protection on works of art or their reproductions is not questioned.[5] Petitioners assume, as Congress has in its

---

[5] We do not reach for constitutional questions not raised by the parties. *Chicago & G. T. R. Co.* v. *Wellman*, 143 U. S. 339, 345; *New York ex rel. Rosevale Realty Co.* v. *Kleinert*, 268 U. S. 646, 651; *C. I. O.* v. *McAdory*, 325 U. S. 472, 475. The fact that the issue was mentioned in argument does not bring the question properly before us. *Herbring* v. *Lee*, 280 U. S. 111, 117.

No question of our jurisdiction emerges. *Chicot County Dist.* v. *Bank*, 308 U. S. 371. Compare *Kalb* v. *Feuerstein*, 308 U. S. 433, and *Continental Illinois Nat. Bank & Trust Co.* v. *Chicago, R. I. & P. R. Co.*, 294 U. S. 648, 667.

Compare on the constitutional question the following: *Burrow-Giles Lithographic Co.* v. *Sarony*, 111 U. S. 53, upheld the copyright of a photograph unanimously. It was said: "By writings in that clause is meant the literary productions of those authors, and Congress very properly has declared these to include all forms of writing, printing, engraving, etching, &c., by which the ideas in the mind of the author are given visible expression." *Id.*, at 58.

"These findings, we think, show this photograph to be an original work of art, the product of plaintiff's intellectual invention, of which plaintiff is the author, and of a class of inventions for which the. Constitution intended that Congress should secure to him the exclusive right to use, publish and sell, as it has done by section 4952 of the Revised Statutes." *Id.*, at 60.

*Bleistein* v. *Donaldson Lithographing Co.*, 188 U. S. 239, 249–250, upheld a copyright on circus posters. The Court said:

"We shall do no more than mention the suggestion that painting and engraving unless for a mechanical end are not among the useful arts, the progress of which Congress is empowered by the Constitution to promote. The Constitution does not limit the useful to that which satisfies immediate bodily needs. . . . Personality always contains something unique. It expresses its singularity even

enactments and as do we, that the constitutional clause empowering legislation "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their

in handwriting, and a very modest grade of art has in it something irreducible, which is one man's alone. That something he may copyright unless there is a restriction in the words of the act."

*Kalem Co.* v. *Harper Bros.*, 222 U. S. 55, 63, involved pirating by motion pictures of the copyrighted dramatic rights of a book. This Court said:

"It is argued that the law construed as we have construed it goes beyond the power conferred upon Congress by the Constitution, to secure to authors for a limited time the exclusive right to their writings. Art. I, § 8, cl. 8. It is suggested that to extend the copyright to a case like this is to extend it to the ideas as distinguished from the words in which those ideas are clothed. But there is no attempt to make a monopoly of the ideas expressed. The law confines itself to a particular, cognate and well known form of reproduction. If to that extent a grant of monopoly is thought a proper way to secure the right to the writings this court cannot say that Congress was wrong."

See also *Schreiber* v. *Thornton*, 17 F. 603, reversed on other grounds, *Thornton* v. *Schreiber*, 124 U. S. 612.

See Fenning, The Origin of the Patent and Copyright Clause of the Constitution, 17 Geo. L. J. 109; 2 Story, Constitution (5th ed.), c. XIX.

*Trade-Mark Cases*, 100 U. S. 82, 94. Congress had passed a trade-mark act under the Patent and Copyright Clause. A unanimous Court held this effort to protect trade-marks was unconstitutional:

"The ordinary trade-mark has no necessary relation to invention or discovery. . . . If we should endeavor to classify it under the head of writings of authors, the objections are equally strong. In this, as in regard to inventions, originality is required. And while the word *writings* may be liberally construed, as it has been, to include original designs for engravings, prints, &c., it is only such as are *original,* and are founded in the creative powers of the mind. The writings which are to be protected are *the fruits of intellectual labor,* embodied in the form of books, prints, engravings, and the like." The trade-mark does not "depend upon novelty, invention, discovery,

respective Writings and Discoveries," Art. I, § 8, cl. 8, includes within the term "Authors" the creator of a picture or a statue. The Court's consideration will be limited to the question presented by the petition for the writ of certiorari.[6] In recent years the question as to utilitarian use of copyrighted articles has been much discussed.[7]

In answering that issue, a review of the development of copyright coverage will make clear the purpose of the Congress in its copyright legislation. In 1790 the First Congress conferred a copyright on "authors of any map, chart, book or books already printed."[8] Later, designing, engraving and etching were included;[9] in 1831 musical

---

or any work of the brain. It requires no fancy or imagination, no genius, no laborious thought. It is simply founded on priority of appropriation."

See as to commerce, *id.*, at 95–98; Robert, Commentary on the Lanham Trade-Mark Act, 15 U. S. C. A. (§§ 81–1113, 1948) p. 265.

[6] *National Licorice Co.* v. *Labor Board,* 309 U. S. 350, 357, n. 2; *General Talking Pictures Corp.* v. *Western Electric Co.,* 304 U. S. 175; *Crown C. & S. Co.* v. *Ferdinand Gutmann Co.,* 304 U. S. 159, and cases cited; *Gunning* v. *Cooley,* 281 U. S. 90. The policy is incorporated in Rule 38 (2), Revised Rules of the Supreme Court of the United States, and the practice of bringing "additional questions into a case" has been condemned recently in *Irvine* v. *California,* 347 U. S. 128, 129.

[7] Ball, Law of Copyright and Literary Property (1944), 390; Howell, Copyright Law (1952), 130; 1 Ladas, The International Protection of Literary and Artistic Property (1938), 247; Weil, Copyright Law (1917), 227; Derenberg, Copyright No-Man's Land: Fringe Rights in Literary and Artistic Property, 1953 Copyright Problems Analyzed (CCH), 215; Pogue, Borderland—Where Copyright and Design Patent Meet, 52 Mich. L. Rev. 33; Notes, 21 Geo. Wash. L. Rev. 353; 66 Harv. L. Rev. 877; 27 Ind. L. J. 130. See Report of the Copyright Committee, Board of Trade (London, October 1952), Artistic Copyright and Industrial Designs, 82 *et seq.*

[8] 1 Stat. 124.

[9] 2 Stat. 171.

compositions; [10] dramatic compositions in 1856; [11] and photographs and negatives thereof in 1865.[12]

The Act of 1870 defined copyrightable subject matter as:

> ". . . any book, map, chart, dramatic or musical composition, engraving, cut, print, or photograph or negative thereof, or of a painting, drawing, chromo, *statue, statuary, and of models or designs intended to be perfected as works of the fine arts."* (Emphasis supplied.) [13]

The italicized part added three-dimensional work of art to what had been protected previously.[14] In 1909 Con-

---

[10] 4 Stat. 436.

[11] 11 Stat. 139.

[12] 13 Stat. 540. Between 1789 and 1904, there were in all some twenty-five laws dealing with copyrights. Solberg, Copyright in Congress (1905), 89–93.

[13] § 86, 16 Stat. 212. This Act also vested control of records relating to copyrights in the Librarian of Congress and provided he should administer the law. *Id.*, § 85.

[14] In connection with the phrase in the 1870 Act "intended to be perfected as works of the fine arts," see the 1874 amendatory Act, 18 Stat. 78, and *Bleistein* v. *Donaldson Lithographing Co.*, 188 U. S. 239. Section 3 contained the following provision: "That in the construction of this act, the words 'Engraving,' 'cut' and 'print' shall be applied only to pictorial illustrations or works connected with the fine arts, and no prints or labels designed to be used for any other articles of manufacture shall be entered under the copyright law, but may be registered in the Patent Office."
This was repealed in 1939 and the following enacted:
"Sec. 2. Section 5 (k) of the Act entitled 'An Act to amend and consolidate the Acts respecting copyright' approved March 4, 1909, is hereby amended to read: '(k) Prints and pictorial illustrations including prints or labels used for articles of merchandise.'" 53 Stat. 1142. This was an amendment to § 5 (k) of the Act of 1909, 35 Stat. 1077. It is to be noted, however, that the 1909 Act did not conform to the 1874 language, but the present Act, 17 U. S. C. (Supp. V, 1952) § 5 (k), does contain the amendatory language of the 1939 Act.

210

gress again enlarged the scope of the copyright statute.[15]
The new Act provided in § 4:

> "That the works for which copyright may be se-
> cured under this Act shall include all the writings
> of an author." [16]

Some writers interpret this section as being coex-
tensive with the constitutional grant,[17] but the House
Report, while inconclusive, indicates that it was "de-
claratory of existing law" only.[18] Section 5 relating to
classes of writings in 1909 read as shown in the margin [omitted]
with subsequent additions not material to this deci-

---

[15] S. Rep. No. 6187, 59th Cong., 2d Sess. 4:

"The existing statutes attempt specifications which are unfortunate
because necessarily imperfect and requiring frequent additions to
cover new forms or new processes. The bill in its general definition
substitutes a general term, 'all the works of an author.' The term
used in the constitution is 'writings.' But Congress has always con-
strued this term broadly, and in doing so has been uniformly sup-
ported by judicial decision. It has, for instance, interpreted it
as authorizing subject-matter so remote from its popular significance
as photographs, paintings, statuary, and dramas, even if unwritten.

"As thus interpreted, the word 'writings' would to-day in popular
parlance be more nearly represented by the word 'works;' and this
the bill adopts; referring back, however, to the word 'writings' by
way of safe anchorage, but regarding this as including 'all forms of
record in which the thought of an author may be recorded and from
which it may be read or reproduced.' "

*Burrow-Giles Lithographic Co.* v. *Sarony*, 111 U. S. 53 (1884), has
held that photographs were copyrightable in spite of the argument
that the Constitution only specified protection for "writings" of an
"author." This decision made clear that "writings" was not limited
to chirography and typography.

[16] 35 Stat. 1076.

[17] Weil, Copyright Law (1917), 214; Howell, The Copyright Law
(3d ed. 1952), 8.

[18] H. R. Rep. No. 2222, 60th Cong., 2d Sess. 10. The report is not
very clear on the point, however.

sion.[19] Significant for our purposes was the deletion of the fine-arts clause of the 1870 Act.[20] Verbal distinctions between purely aesthetic articles and useful works of art ended insofar as the statutory copyright language is concerned.[21]

The practice of the Copyright Office, under the 1870 and 1874 Acts and before the 1909 Act, was to allow registration "as works of the fine arts" of articles of the same character as those of respondents now under challenge. Seven examples appear in the Government's

---

[19] "The application for registration shall specify to which of the following classes the work in which copyright is claimed belongs:

"(a) Books including composite and cyclopaedic works, directories, gazetteers, and other compilations;

"(b) Periodicals, including newspapers;

"(c) Lectures, sermons, addresses, prepared for oral delivery;

"(d) Dramatic or dramatico-musical compositions;

"(e) Musical compositions;

"(f) Maps;

"(g) Works of art; models or designs for works of art;

"(h) Reproductions of a work of art;

"(i) Drawings or plastic works of a scientific or technical character;

"(j) Photographs;

"(k) Prints and pictorial illustrations:

"*Provided, nevertheless,* That the above specifications shall not be held to limit the subject-matter of copyright as defined in section four of this Act, nor shall any error in classification invalidate or impair the copyright protection secured under this Act." 35 Stat. 1076.

Subsection (k) was amended by the addition of the words "including prints or labels used for articles of merchandise" in 1939. 53 Stat. 1142. See note 14, *supra.* Two more classes "(l) Motion-picture photoplays" and "(m) Motion pictures other than photoplays" were added in 1912. 37 Stat. 488.

[20] See note 14, *supra,* for repeal of clause defining engraving cuts and prints in terms of "fine art."

[21] Title 17 of the United States Code entitled "Copyrights" was codified into positive law in 1947 without change in the pertinent provisions. 61 Stat. 652, 17 U. S. C. (Supp. V, 1952) §§ 4, 5.

brief *amicus curiae.*[22] In 1910, interpreting the 1909 Act, the pertinent Copyright Regulations read as shown in the margin.[23] Because, as explained by the Government, this regulation "made no reference to articles which might fairly be considered works of art although they might also serve a useful purpose," it was reworded in 1917 as shown below.[24] The *amicus* brief gives sixty examples selected at five-year intervals, 1912–1952, said to be typical of registrations of works of art possessing utilitarian aspects.[25] The current pertinent regulation, published in 37 CFR, 1949, § 202.8, reads thus:

> "*Works of art (Class G)*—(a) *In General.* This class includes works of artistic craftsmanship, in so far as their form but not their mechanical or utilitarian aspects are concerned, such as artistic jewelry,

---

[22] *E. g.,* "A female figure bearing an urn in front partly supported by drapery around the head. The figure nude from the waist up and below this the form concealed by conventionalized skirt draperies which flow down and forward forming a tray at the base. Sides and back of skirt in fluted form. The whole being designed as a candlestick with match tray. The figure standing and bent forward from hips and waist."

[23] "*Works of art.*—This term includes all works belonging fairly to the so-called fine arts. (Paintings, drawings, and sculpture.)

"Productions of the industrial arts utilitarian in purpose and character are not subject to copyright registration, even if artistically made or ornamented." Rules and Regulations for the Registration of Claims to Copyright, Bulletin No. 15 (1910), 8.

[24] "Works of art and models or designs for works of art. This term includes all works belonging fairly to the so-called fine arts. (Paintings, drawings, and sculpture.)

"The protection of productions of the industrial arts utilitarian in purpose and character even if artistically made or ornamented depends upon action under the patent law; but registration in the Copyright Office has been made to protect artistic drawings notwithstanding they may afterwards be utilized for articles of manufacture." 37 CFR, 1939, § 201.4 (7).

[25] *E. g.,* "*Lighting fixture design.* By F. E. Guitini. [Bowl-shaped bracket embellished with figure of half-nude woman standing

enamels, glassware, and tapestries, as well as all works belonging to the fine arts, such as paintings, drawings and sculpture. . . ."

So we have a contemporaneous and long-continued construction of the statutes by the agency charged to administer them that would allow the registration of such a statuette as is in question here.[26]

This Court once essayed to fix the limits of the fine arts.[27] That effort need not be appraised in relation to this copyright issue. It is clear Congress intended the scope of the copyright statute to include more than the traditional fine arts. Herbert Putnam, Esq., then Librarian of Congress and active in the movement to amend the copyright laws, told the joint meeting of the House and Senate Committees:

"The term 'works of art' is deliberately intended as a broader specification than 'works of the fine arts' in the present statute with the idea that there is subject-matter (for instance, of applied design, not yet within the province of design patents), which may properly be entitled to protection under the copyright law." [28]

The successive acts, the legislative history of the 1909 Act and the practice of the Copyright Office unite to show

in bunch of flowers.] Copyright December 28, 1912. Registration number G 42645. Copyright claimant: Kathodion Bronze Works, New York."

[26] *Great Northern R. Co.* v. *United States,* 315 U. S. 262, 275.

[27] *United States* v. *Perry,* 146 U. S. 71, 74.

[28] Arguments before the Committees on Patents of the Senate and House of Representatives, conjointly, on S. 6330 and H. R. 19853, To Amend and Consolidate the Acts Respecting Copyright, 59th Cong., 1st Sess., June 6–9, 1906, p. 11. The statement is applicable to the 1909 Act since §§ 5 (g) and (h) of the 1909 Act are identical with the same sections of S. 6330 and H. R. 19853. Although there were other hearings and reports (see 51 House Committee Hearings before

that "works of art" and "reproductions of works of art" are terms that were intended by Congress to include the authority to copyright these statuettes. Individual perception of the beautiful is too varied a power to permit a narrow or rigid concept of art. As a standard we can hardly do better than the words of the present Regulation, § 202.8, *supra,* naming the things that appertain to the arts. They must be original, that is, the author's tangible expression of his ideas. Compare *Burrow-Giles Lithographic Co.* v. *Sarony,* 111 U. S. 53, 59–60. Such expression, whether meticulously delineating the model or mental image or conveying the meaning by modernistic form or color, is copyrightable.[29] What cases there are confirm this coverage of the statute.[30]

The conclusion that the statues here in issue may be copyrighted goes far to solve the question whether their intended reproduction as lamp stands bars or invalidates their registration. This depends solely on statutory interpretation. Congress may after publication protect by copyright any writing of an author. Its statute creates the copyright.[31] It did not exist at common law even

---

Committee on Patents (1906–1912), on Consolidating and Revising the Copyright Laws; H. R. Rep. No. 2222, 60th Cong., 2d Sess. 3), this statement of Mr. Putnam is the only explanation of the change in statutory language, though S. Rep. No. 6187, 59th Cong., 2d Sess., p. 11, refers to "works of art" as a new designation and mentioned the deletion of "fine" from the category.

[29] Cf. *H. C. White Co.* v. *Morton E. Converse & Son Co.,* 20 F. 2d 311.

[30] *Burrow-Giles Lithographic Co.* v. *Sarony,* 111 U. S. 53, 60; *Bleistein* v. *Donaldson Lithographing Co.,* 188 U. S. 239, 250; *Louis De Jonge & Co.* v. *Breuker & Kessler Co.,* 182 F. 150, 152; *F. W. Woolworth Co.* v. *Contemporary Arts,* 193 F. 2d 162, 164; see same case, 344 U. S. 228; *Yuengling* v. *Schile,* 12 F. 97, 100; *Schumacher* v. *Schwencke,* 25 F. 466; *Pellegrini* v. *Allegrini,* 2 F. 2d 610.

[31] *Wheaton and Donaldson* v. *Peters and Grigg,* 8 Pet. 591, 661; *Fox Film Corp.* v. *Doyal,* 286 U. S. 123, 127.

though he had a property right in his unpublished work.[32]

But petitioners assert that congressional enactment of the design patent laws should be interpreted as denying protection to artistic articles embodied or reproduced in manufactured articles.[33] They say:

> "Fundamentally and historically, the Copyright Office is the repository of what each claimant considers to be a cultural treasure, whereas the Patent Office is the repository of what each applicant considers to be evidence of the advance in industrial and technological fields."

Their argument is that design patents require the critical examination given patents to protect the public against monopoly. Attention is called to *Gorham Co.* v. *White,* 14 Wall. 511, interpreting the design patent law of 1842, 5 Stat. 544, granting a patent to anyone who by "their own industry, genius, efforts, and expense, may have invented or produced any new and original design for a manufacture . . . ." A pattern for flat silver was there upheld.[34] The intermediate and present law differs

---

[32] Lord Brougham and Lord St. Leonards in *Jefferys* v. *Boosey,* IV H. L. C. 815, 968, 979, 10 Eng. Rep. 681, 741, 745.

[33] Two cases are relied upon to support the position of the petitioners. *Taylor Instrument Companies* v. *Fawley-Brost,* 139 F. 2d 98, and *Brown Instrument Co.* v. *Warner,* 82 U. S. App. D. C. 232, 161 F. 2d 910. These cases hold that the Mechanical Patent Law and Copyright Laws are mutually exclusive. As to overlapping of Design Patent and Copyright Laws, however, a different answer has been given by the courts. *Louis De Jonge & Co.* v. *Breuker & Kessler Co.,* 182 F. 150, affirmed on other grounds in 191 F. 35, and 235 U. S. 33; see also cases cited in note 37, *infra.*

[34] This Court said, p. 525: "It is a new and original design for a manufacture, whether of metal or other material; . . . to be either worked into, or on, any article of manufacture; or a new and original shape or configuration of any article of manufacture—it is one or all of these that the law has in view. And the thing invented or pro-

little. "Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor, . . ." subject generally to the provisions concerning patents for invention. § 171, 66 Stat. 805. As petitioner sees the effect of the design patent law:

> "If an industrial designer can not satisfy the novelty requirements of the design patent laws, then his design as used on articles of manufacture can be copied by anyone."

Petitioner has furnished the Court a booklet of numerous design patents for statuettes, bases for table lamps and similar articles for manufacture, quite indistinguishable in type from the copyrighted statuettes here in issue.[35] Petitioner urges that overlapping of patent and copyright legislation so as to give an author or inventor a choice between patents and copyrights should not be permitted. We assume petitioner takes the position that protection for a statuette for industrial use can only be obtained by patent, if any protection can be given.[36]

---

duced, for which a patent is given, is that which gives a peculiar or distinctive appearance to the manufacture, or article to which it may be applied, or to which it gives form. . . . It therefore proposes to secure for a limited time to the ingenious producer of those appearances the advantages flowing from them. . . . It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, if not entirely, the contribution to the public which the law deems worthy of recompense."

[35] E. g., Design Patent 170.445 Base for table lamps, a fanciful statuette of a girl standing in front of a high rock in bathing costume.

[36] The English Copyright Act, 1911, § 22, 4 Halsbury's Statutes of England (2d ed.), p. 800, does not protect designs registrable under the Patents and Designs Act (now the Registered Designs Act, 1949, 17 Halsbury's Statutes of England (2d ed.)) unless such designs are not used or intended to be used as models or patterns to be multiplied by any industrial process. The Board of Trade has ruled that a design shall be deemed to be used as a model or pattern to be multi-

As we have held the statuettes here involved copyrightable, we need not decide the question of their patentability. Though other courts have passed upon the issue as to whether allowance by the election of the author or patentee of one bars a grant of the other, we do not.[37] We do hold that the patentability of the statuettes, fitted as lamps or unfitted, does not bar copyright as works of art. Neither the Copyright Statute nor any other says that because a thing is patentable it may not be copyrighted. We should not so hold.[38]

Unlike a patent, a copyright gives no exclusive right to the art disclosed; protection is given only to the expression of the idea—not the idea itself.[39] Thus, in *Baker* v. *Selden,* 101 U. S. 99, the Court held that a copyrighted book on a peculiar system of bookkeeping was not infringed by a similar book using a similar plan which achieved similar results where the alleged infringer made a different arrangement of the columns and used different headings. The distinction is illustrated in *Fred Fisher, Inc.* v. *Dillingham,* 298 F. 145, 151, when the court speaks of two men, each a perfectionist, independently making

plied by industrial process within the meaning of § 22 when the design is reproduced or intended to be reproduced in more than fifty single articles. The Copyright (Industrial Designs) Rules, 1949, No. 2367, 1 Statutory Instruments 1949, p. 1453.

[37] See *Rosenthal* v. *Stein,* note 3, *supra; In re Blood,* 57 App. D. C. 351, 23 F. 2d 772; *Korzybski* v. *Underwood & Underwood, Inc.,* 36 F. 2d 727; *William A. Meier Glass Co.* v. *Anchor Hocking Glass Corp.,* 95 F. Supp. 264, 267; *Jones Bros. Co.* v. *Underkoffler,* 16 F. Supp. 729; *Louis De Jonge & Co.* v. *Breuker & Kessler Co.,* 182 F. 150; 66 Harv. L. Rev. 884; 52 Mich. L. Rev. 33; cf. *Taylor Instrument Companies* v. *Fawley-Brost,* 139 F. 2d 98.

[38] See, Pogue, Borderland—Where Copyright and Design Patent Meet, 52 Mich. L. Rev. 33, 58.

[39] *F. W. Woolworth Co.* v. *Contemporary Arts,* 193 F. 2d 162; *Ansehl* v. *Puritan Pharmaceutical Co.,* 61 F. 2d 131; *Fulmer* v. *United States,* 122 Ct. Cl. 195, 103 F. Supp. 1021; *Muller* v. *Triborough Bridge Authority,* 43 F. Supp. 298.

maps of the same territory. Though the maps are identical, each may obtain the exclusive right to make copies of his own particular map, and yet neither will infringe the other's copyright. Likewise a copyrighted directory is not infringed by a similar directory which is the product of independent work.[40] The copyright protects originality rather than novelty or invention—conferring only "the sole right of multiplying copies."[41] Absent copying there can be no infringement of copyright.[42] Thus, respondents may not exclude others from using statuettes of human figures in table lamps; they may only prevent use of copies of their statuettes as such or as incorporated in some other article. Regulation § 202.8, *supra*, makes clear that artistic articles are protected in "form but not their mechanical or utilitarian aspects." See *Stein* v. *Rosenthal*, 103 F. Supp. 227, 231. The dichotomy of protection for the aesthetic is not beauty and utility but art for the copyright and the invention of original and ornamental design for design patents. We find nothing in the copyright statute to support the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates its registration. We do not read such a limitation into the copyright law.

Nor do we think the subsequent registration of a work of art published as an element in a manufactured article, is a misuse of the copyright. This is not different from

---

[40] *Sampson & Murdock Co.* v. *Seaver-Radford Co.*, 140 F. 539. See, Anno. 26 A. L. R. 585.

[41] *Jeweler's Circular Pub. Co.* v. *Keystone Publishing Co.*, 281 F. 83, 94.

[42] *White-Smith Music Pub. Co.* v. *Apollo Co.*, 209 U. S. 1; *Bleistein* v. *Donaldson Lithographing Co.*, 188 U. S. 239, 249; *Arnstein* v. *Porter*, 154 F. 2d 464, 468–469; *Alfred Bell & Co., Ltd.* v. *Catalda Fine Arts, Inc.*, 191 F. 2d 99, 103; *Ansehl* v. *Puritan Pharmaceutical Co., supra; Christie* v. *Cohan*, 154 F. 2d 827.

the registration of a statuette and its later embodiment in an industrial article.

"The copyright law, like the patent statutes, makes reward to the owner a secondary consideration." *United States* v. *Paramount Pictures,* 334 U. S. 131, 158. However, it is "intended definitely to grant valuable, enforceable rights to authors, publishers, etc., without burdensome requirements; 'to afford greater encouragement to the production of literary [or artistic] works of lasting benefit to the world.'" *Washingtonian Co.* v. *Pearson,* 306 U. S. 30, 36.

The economic philosophy behind the clause empowering Congress to grant patents and copyrights is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare through the talents of authors and inventors in "Science and useful Arts." Sacrificial days devoted to such creative activities deserve rewards commensurate with the services rendered.

*Affirmed.*

Opinion of MR. JUSTICE DOUGLAS, in which MR. JUSTICE BLACK concurs.

An important constitutional question underlies this case—a question which was stirred on oral argument but not treated in the briefs. It is whether these statuettes of dancing figures may be copyrighted. Congress has provided that "works of art," "models or designs for works of art," and "reproductions of a work of art" may be copyrighted (17 U. S. C. § 5); and the Court holds that these statuettes are included in the words "works of art." But may statuettes be granted the monopoly of the copyright?

Article I, § 8 of the Constitution grants Congress the power "To promote the Progress of Science and useful Arts, by securing for limited Times to Authors . . . the

exclusive Right to their respective Writings . . . ." The power is thus circumscribed: it allows a monopoly to be granted only to "authors" for their "writings." Is a sculptor an "author" and is his statue a "writing" within the meaning of the Constitution? We have never decided the question.

*Burrow-Giles Lithographic Co.* v. *Sarony,* 111 U. S. 53, held that a photograph could be copyrighted.

*Bleistein* v. *Donaldson Lithographing Co.,* 188 U. S. 239, held that chromolithographs to be used as advertisements for a circus were "pictorial illustrations" within the meaning of the copyright laws. Broad language was used in the latter case, ". . . a very modest grade of art has in it something irreducible, which is one man's alone. That something he may copyright unless there is a restriction in the words of the act." 188 U. S., at 250. But the constitutional range of the meaning of "writings" in the field of art was not in issue either in the *Bleistein* case nor in *Woolworth Co.* v. *Contemporary Arts,* 344 U. S. 228, recently here on a writ of certiorari limited to a question of damages.

At times the Court has on its own initiative considered and decided constitutional issues not raised, argued, or briefed by the parties. Such, for example, was the case of *Continental Bank* v. *Rock Island R. Co.,* 294 U. S. 648, 667, in which the Court decided the constitutionality of § 77 of the Bankruptcy Act though the question was not noticed by any party. We could do the same here and decide the question here and now. This case, however, is not a pressing one, there being no urgency for a decision. Moreover, the constitutional materials are quite meager (see Fenning, The Origin of the Patent and Copyright Clause of the Constitution, 17 Geo. L. J. 109 (1929)); and much research is needed.

The interests involved in the category of "works of art," as used in the copyright law, are considerable. The

Copyright Office has supplied us with a long list of such articles which have been copyrighted—statuettes, book ends, clocks, lamps, door knockers, candlesticks, inkstands, chandeliers, piggy banks, sundials, salt and pepper shakers, fish bowls, casseroles, and ash trays. Perhaps these are all "writings" in the constitutional sense. But to me, at least, they are not obviously so. It is time that we came to the problem full face. I would accordingly put the case down for reargument.