**Russell M. GIBSON, Plaintiff,**

v.

**CBS, INC., Defendant.**

**No. 78 Civ. 0035(MEL).**

United States District Court, S. D. New York.

June 24, 1980.

Klein & Vibber, New York City, for plaintiff; Alfred W. Vibber, New York City, of counsel.

Pryor, Cashman, Sherman & Flynn, New York City, for defendant; Stephen F. Huff, Gayle A. Yeomans, New York City, of counsel.

LASKER, District Judge.

Russell M. Gibson sues CBS, Inc. alleging that his copyright[1] in a lecture entitled "I am And Egg" was infringed by the CBS broadcast on September 24, 1975 and June 6, 1976 of a skit entitled "SFX: Egg Cracking" on the Tony Orlando and Dawn Show.

CBS moves pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure for summary judgment dismissing the complaint on the grounds that it fails to state a claim upon which relief may be granted. CBS argues that as a matter of law there is no substantial similarity between the two works and accordingly no copyright infringement.

*I. The Principal Works*

Gibson's lecture is one half of a typewritten page and is written to be delivered by only one person. It begins with the character announcing "I Am AND [sic] EGG," and goes on to describe the "plight of an egg," from the comfort of lying under a chicken,

---

1. CBS concedes that Gibson's lecture was copyrighted.

to being picked up by a "no good farmer . . . with his cold hand" who puts him in a "little grey box with eleven strange eggs . . . on this little shelf frezzing" [sic] where a light goes on and off. He hears voices saying "I WANT MINE OVER LIGHT" or "ILL [sic] HAVE MINE SCRAMBLED." He remembers his mother's advice to "Make SHORE YOUR SUNNY SIDE UP" [sic] but learns that it is more fun to be scrambled and "swoshed around together" with a female egg. He concludes that "MOTHER WAS WRONG."

The CBS skit, which was performed by Tony Orlando and Anne Meara, is written for two characters, the white and the yolk of one egg, who confront the trauma of anticipated separation. The introduction, performed by an unseen narrator, states the theme:

> "One of the most painful experiences in any relationship is separation. When Romeo was separated from Juliet—that was painful. Every separation is painful. Even the separation of the white of an egg from the yolk."

As the skit begins, the roof of an egg shell lifts revealing the yolk (Anne) and the white (Tony) who speculate about "what's going on." Tony believes they are a rooster, but Anne disagrees and suggests that they are an oyster or perhaps an egg. Tony expresses surprise at discovering Anne's true color: yellow. From the smell of bread they deduce that they are in a bakery, which upsets Anne because, as she complains to Tony, that is where

> "[t]hey rip us apart from each other . . they separate the white from the yolk. Sure, you could end up in icing and I could end up in a hostess Twinkie."

The sight of a man in a "big white hat" and holding an egg beater frightens Anne, who is reassured by Tony:

> "Easy does it Yolkie . . . We've come through tighter places before you know."

Each speculates about what might have been: Tony had "political ambitions."

"I saw us on Easter day rolling on the White House lawn."

Anne had other dreams:

> "I could have been an egg nog at a Howard Cosell party . . . . if only we'd have stayed under mom just a few more days . . . We would have been a chicken."

Anne confesses that she will miss Tony, who stages a fight and accuses her of being "full of cholesterol." At first taken in, Anne responds that he is "all white and runnie and gushie," and that he "take[s] up the whole shell."

Suddenly the man appears again holding a frying pan, causing Anne to comment on the unjustness of being an egg:

> "[W]hat is it all for, huh . . . 21 days to become an egg . . . another two weeks sitting on the shelf with eleven other dummies in a cardboard condominium . . . and for what . . for what? . . . for this, once over easy with a side of bacon."

The skit concludes as Tony points out that the "most important thing" is not what happens to them, but "Just so long as we can face it together."

## II. Substantial Similarity

■ To prove copyright infringement, a plaintiff must establish that the defendant copied his work. *Mazer v. Stein*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 90 (2d Cir.), *cert. denied*, 429 U.S. 980, 97 S.Ct. 492, 50 L.Ed.2d 588 (1976). " '[I]f there are no similarities, no amount of evidence of access will suffice to prove copying,' " *id.* (quoting *Arnstein v. Porter*, 154 F.2d 464, 468 (2d Cir. 1946)). Accordingly, summary judgment would be appropriate if there is no substantial similarity between Gibson's lecture and the CBS skit.

■ Copyright protection extends only to the expression of an idea, and not to the idea itself. *Mazer v. Stein, supra*, 347 U.S. 201, 217, 74 S.Ct. 460, 470, 98 L.Ed. 630 (1954); *Baker v. Selden*, 101 U.S. 99, 102–03 (1879); *Reyher v. Children's Television*

*Workshop, supra,* 533 F.2d at 90; 17 U.S.C. § 102(b). Although the distinction between an idea and its expression is not always clear, *see* 3 Nimmer on Copyright § 13.-03[A], at 13–18 (1979), past applications of that distinction by the Second Circuit clearly dictate the result here.

In *Reyher v. Children's Television Workshop, supra,* the court affirmed the dismissal of a copyright action on the grounds that there was no substantial similarity between the principal works. There the theme of plaintiffs' children's book as well as defendants' television show and subsequent magazine publication was that of a lost child who describes his or her mother to a group of strangers as the most beautiful woman in the world. After a search for the mother based on that description proves unfruitful, a homely woman, who turns out to be the mother, is united with the child.

The court held that "[s]ince both [stories] present only the same idea, no infringement as to protected expression occurred," *id.* at 92–93, even though "both works present the thematic concept that to a lost child, the familiar face of the mother is the most beautiful face, even though the mother is not, in fact, beautiful to most." *Id.* (footnote omitted). The court stated:

> "The overlapping sequences of events concern the lost child finding his or her mother, albeit with some difficulty because of the description given. This similarity of events, however, may be considered *scenes a faire,* scenes which necessarily result from identical situations. Thus, where a lost child is the protagonist, there is likely to be a reunion with parents. Furthermore, the morals stated by the two stories differ in emphasis . . . . More importantly, however, the two works differ in 'total feel.' . . The two stories are not similar in mood, details or characterization."

*Id.* at 92 (footnote omitted) (emphasis in original).

Similarly, in *Nichols v. Universal Pictures Corporation,* 45 F.2d 119 (2d Cir. 1930), *cert. denied,* 282 U.S. 902, 51 S.Ct. 216, 75 L.Ed. 795 (1931), the court found that no more than the idea of plaintiff's play, "Abie's Irish Rose," had been used in defendant's motion picture "The Cohens and the Kellys." Although common to both works were a "quarrel between a Jewish and an Irish father, the marriage of their children, the birth of grandchildren and a reconciliation," the court held that these were ideas, not expressions, and therefore not subject to copyright protection. *Id.* at 122.

Here, the only similarities between Gibson's lecture and the CBS skit are (1) the use of the literary device of personifying an egg (or its parts)—that is, attributing to an egg the powers of speech, sensation and feelings—(2) the egg's undergoing certain experiences, such as lying under a chicken or in a box with other eggs in a refrigerator where it is cold and a light goes on and off, and (3) the egg's reacting to the possibility of being scrambled or fried.

The attribution to an egg of the qualities normally possessed by human beings is of course an "idea" and no more. The idea alone is not subject to copyright protection. The other similarities—depictions of the experience and reactions of an egg are "scenes a faire," that is:

> "sequences of events which necessarily follow from a common theme. '[S]imilarity of expression . . . which necessarily results from the fact that the common idea is only capable of expression in more or less stereotyped form will preclude a finding of actionable similarity.'"

*Reyher v. Children's Television Workshop, supra,* 533 F.2d at 91 (quoting 3 Nimmer on Copyright § 13.03[A] at 13–26 (1979)).

Gibson argues that the similarities do not necessarily follow from the common idea of an egg personified, since an author has a wide choice of events that may occur in the life of an egg. For example, Gibson suggests that instead of lying under a chicken, an egg might be hatched in an incubator, could have been colored and rolled, preserved in a liquid bath, boiled (soft or hard), whipped, used in a souffle, freezed or dried into a powder, or used raw, such as in an

eggnog. However, the occurrences that are common to both works, that is, lying under a chicken, sitting in a refrigerator and facing the possibility of being scrambled or fried, are fairly predictable and usual in the life of an egg, while the alternatives Gibson offers do not "necessarily follow" from the "common theme."

Moreover, even if the similarities between the two works be deemed to have "descended so far into the concrete as to invade [his] expression," *Reyher, supra,* at 91, the similarity would be insufficiently substantial to be actionable in light of the large difference between the two works. The CBS skit treats more events that occur to an egg—such as being separated and being used in an icing and a Hostess twinkie, put into a blender and a cake mix, "rolling on the White House lawn" on Easter Day, used in an eggnog for a Howard Cosell party, and hatched into a chicken and subsequently fried—than does Gibson's lecture. The theme of separation which is the subject of the CBS skit[2] nowhere appears in the Gibson lecture whose message is that it would be better to be scrambled with a female egg than to be sunnyside up as his mother had advised. The skit focuses on the relationship between the two characters while the lecture is concerned with the reactions of one.

In sum, the only similarities between the plaintiff and defendant's material are the idea of a personified egg and of certain situations that necessarily follow from that idea. There is no substantial similarity between the expressions of the idea in the two works.

The motion for summary judgment is granted and the complaint is dismissed.

It is so ordered.

---

2. Gibson argues that the use of two characters in the CBS skit does not constitute a dissimilarity between that work and his lecture because by the end of the skit they have not yet been separated. While it is true that the ultimate fate of the white and the yolk remains a subject of speculation at the end of the skit, the more important element of the theme of anticipated separation of the two characters markedly distinguishes the skit from the lecture.