FINANCIAL CONTROL ASSOCIATES,
INC., Plaintiff,

v.

EQUITY BUILDERS, INC., Robert V.
Bundy, Benjamin F. Blair and Dave
Anderson, Defendants.

Case No. 92–4192–SAC.

United States District Court,
D. Kansas.

Jan. 28, 1993.

David A. Hanson, Glenn, Cornish, Hanson & Karns, Chartered, Topeka, KS, Wendell R. Bird, David J. Myers, Timothy W. Townsend, Bird & Associates, Atlanta, GA, for plaintiff.

Gary H. Hanson, Stumbo, Hanson & Hendricks, Topeka, KS, Don M. Bradley, Michael B. Hurd, Shook, Hardy & Bacon, Kansas City, MO, Jeffrey S. Nelson, Shook, Hardy & Bacon, Overland Park, KS, for defendants.

MEMORANDUM AND ORDER

CROW, District Judge.

On September 1, 1992, this court entered a forty-eight page memorandum and order denying Financial Control Associates, Inc.'s (FCA) motion for a temporary restraining order and preliminary injunction against the defendants. *See Financial Control Associates v. Equity Builders,* 799 F.Supp. 1103 (D.Kan.1992). This case comes before the court upon FCA's motion for reconsideration (Dk. 15). The defendants have filed a response and FCA has filed a reply.

The court, having considered the briefs of counsel, the evidence presented and the applicable law, is now prepared to rule.

Standards for Reconsideration

█ A motion to reconsider filed within ten days of the entry of final judgment

is treated as a motion to alter or amend. *See Van Skiver v. United States*, 952 F.2d 1241 (10th Cir.1991). The court has treated FCA's motion for a temporary restraining order and a preliminary injunction as a motion to alter and amend. Motions to alter or amend are intended to correct manifest errors of law or fact or to present newly discovered evidence under limited circumstances. *Weiberg v. Resthaven Gardens of Memory*, No. 89–1509–C, 1991 WL 241815, *1, 1991 U.S. Dist. LEXIS 16013, at *2 (D.Kan. October 29, 1991); *see Dresser Industries, Inc. v. Pyrrhus*, 936 F.2d 921, 935–36 (7th Cir.1991); *Renfro v. City of Emporia, Kan.*, 732 F.Supp. 1116, 1117 (D.Kan.1990), *aff'd*, 948 F.2d 1529 (10th Cir.1991). "[A] party's failure to present his strongest case in the first instance does not entitle him to a second chance in the form of a motion to amend." *Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.*, No. 89–1412–C, 1989 WL 159369, at *1, 1989 U.S. Dist. LEXIS 15684, at *2 (D.Kan. December 15, 1989). Nor should a motion to alter or amend be used as a vehicle for the losing party to rehash arguments previously considered and rejected by the district court. *National Metal Finishing v. Barclays-American*, 899 F.2d 119, 123 (1st Cir.1990).

## Arguments of FCA

FCA's motion to reconsider essentially posits two separate lines of arguments. First, FCA seeks to submit to the court additional facts in support of its motions for injunctive relief. Specifically, FCA wishes to submit an affidavit from Gary Ott, president of FCA. In that affidavit, Gary Ott emphatically denies that he has ever told Robert Bundy or anyone else that he does not believe in the strength of FCA's copyright on the Mortgage Controller. Gary Ott states his unqualified belief that the copyright is valid and would survive attack in court. In addition to Ott's affidavit, certain FCA associates aver that Gary Ott has never made any statements which would cast doubt upon the strength of the Mortgage Controller's copyright. FCA also offers another affidavit from another FCA associate who indicated her re-

luctance to sell the Mortgage Controller in light of the fact that the Equity Builder is sold at approximately half the price. FCA once again attempts to offer the affidavit of T. Michael Seale. In that affidavit, Seale indicates that FCA took five or six months to develop at an approximate cost of $250,000, and that approximately 2,500 persons derive income from the sales of the Mortgage Controller.

Second, FCA contends that the court erred in failing to grant an injunction based upon the evidence presented. FCA contends that it has demonstrated ownership of a valid copyright and that the defendants' Equity Builder is a copy of the Mortgage Controller. FCA contends that the court lost sight of the ultimate issue—whether the defendants' product is a copy of FCA's copyrighted product. FCA also contends that even if Bundy subconsciously copied the Equity Builder, he is still liable for copyright infringement.

Once again, FCA argues that the Equity Builder is substantially similar to the Mortgage Controller. FCA argues that each portion of the products cannot be viewed in isolation and that certain parts of the product, while not copyrightable themselves, may be combined in such a manner to produce a copyrightable product. FCA asks the court to review the two products and reach the conclusion that the two products are substantially similar.

Finally, FCA argues that its selection and arrangement of its product is capable of copyright and that Equity Builders is clearly an infringement of its copyright. In short, FCA contends that the court has not seriously considered its arguments that clearly demonstrate that Equity Builders infringes upon its copyright and has disregarded admissions by Bundy that he copied the Mortgage Controller.

In response, the defendants contend that the court's memorandum and order clearly and accurately states the facts and applicable law. The defendants challenge FCA's attempts to submit additional evidence, particularly in light of the fact that the court offered the parties an opportunity to file a supplementary brief at the close of the

August 20, 1992, hearing. The defendants also sardonically comment on the additional evidence offered, noting that the supplementary evidence contradicts the testimony of Shari Morrison, FCA's "star" witness.

As to the evidence presented at the August 20, 1992, hearing and the conclusions reached by the court in its memorandum and order, the defendants contend that the ideas contained in the Mortgage Controller merge with their expression.

In its reply, FCA contends that its motion to reconsider is appropriate as the court has misunderstood and misapplied the law. FCA contends that it should not be prevented from submitting supplementary evidence as that evidence did not appear to be necessary at the time of the hearing or was unavailable. FCA also urges several of the same arguments which it made in its motion to reconsider.

### Overview

Prior to entering the court's memorandum and order of September 1, 1992, the court considered not only the briefs of counsel and cases cited therein, but also relevant case law from the Supreme Court, the Tenth Circuit and other federal courts. In addition, the court also reviewed relevant portions of two different, multi-volume treatises, as well as law review articles discussing copyright law.

In the memorandum and order addressing the plaintiff's motions, the court, in excruciating detail, described the two products.[1] The court then set forth the applicable law and discussed at some length its serious concerns about the plaintiff's ability to overcome the defenses asserted by the defendants. Even in this motion to reconsider, FCA has not adequately explained why the "blank form" doctrine and the "merger" doctrine are not applicable to this case. Nor has it attempted to demonstrate, in detail, how the court erred in the

application of these doctrines. If the court has somehow misunderstood copyright law, the plaintiff has failed to explain, with specificity, how the court erred.

In short, FCA argues that the court simply reached the wrong conclusion. Nothing in FCA's motion to reconsider convinces the court that its denial of a temporary restraining order or preliminary injunction was in error, and FCA's motion to reconsider is denied to the extent it simply rehashes the same arguments previously considered and rejected by the court on that basis alone.

### Submission of Additional Evidence

FCA contends that it should be allowed to present additional evidence in support of its motion to reconsider. The evidence FCA seeks to introduce is in part directed toward controverting the uncontroverted facts pertaining to Gary Ott's statements that the copyright on the Mortgage Controller would not "hold up" in court, but that FCA could always sue a competitor to enforce its copyright, essentially using the copyright as a cudgel to threaten potential competitors. FCA also desires to submit other affidavits from other FCA associates who claim that they have never heard Gary Ott make such statements at meetings.

■ The issuance of a preliminary injunction is an extraordinary remedy. A party seeking such a remedy should be prepared to present its best case at the initial hearing, particularly in this case when there appears to have been adequate prior notice of the hearing. FCA has not adequately demonstrated that this evidence was not available prior to the August 20, 1992, hearing, nor does FCA's misapprehension of the merits of its motions in and of itself entitle it to another opportunity to present additional evidence. The court therefore refuses to consider any evidence

---

1. In general, FCA does not appear to challenge the court's findings of fact. Rather, FCA appears to challenge this court's ultimate conclusions. To the extent that FCA challenges any factual determinations in this case, the court reminds FCA that it is for the court to evaluate the testimony presented and the weight of the evidence.

For example, Bundy admits that he copied the idea of mortgage prepayment from the Mortgage Controller. This admission does not, however, prove that the Equity Builder infringes on FCA's copyright.

that was not submitted during the August 20, 1992, hearing. *See Paramount Pictures Corp. v. Video Broadcasting Sys., Inc.,* No. 89–1412–C, 1989 WL 159369, at *1, 1989 U.S. Dist. LEXIS 15684, at *2 (D.Kan. December 15, 1989).

Nevertheless, the court will comment on FCA's attempt to refute evidence which indicated that Gary Ott did not believe the copyright on the Mortgage Controller to be valid, but was instead merely a means by which FCA could sue competitors. Not only did Bundy indicate that Gary Ott had made such statements in the past, Shari Morrison, an FCA associate, similarly testified that Ott had made such statements in the past. In its reply brief, FCA argues (1) that Shari Morrison's testimony did not actually support such a conclusion and (2) that Shari Morrison was hesitant in making the statements which she did make, supporting the proposition that she had not heard Ott make such statements about the validity of the copyright.

The court independently recalls Shari Morrison's testimony concerning this issue. At the hearing, during cross-examination, Morrison testified:

> Defendants' Counsel: Have you been present on any occasion in which Mr. Ott has indicated that the copyright on the Mortgage Controller would not hold up in court, in his opinion, but would give the company the right to sue?
>
> Shari Morrison: I have never really exactly heard him say that.
>
> Defendants' Counsel: Have you heard him say something like that?
>
> Shari Morrison: Well, yes.

Partial Transcript of August 20, 1992, hearing, page 47.

Morrison's testimony clearly supports the court's findings of fact on this particular issue. Moreover, FCA did not attempt to rehabilitate Morrison's testimony, even after Bundy later testified that Gary Ott has stated on several occasions that he did not believe the copyright was valid. As to the "hesitancy" of Shari Morrison, the court agrees that she was somewhat reluctant during this portion of the cross-examination. The court, however, attributes Morrison's hesitancy to the sudden realization that Ott's statements undermined FCA's position and that the threat of suing "infringing" competitors, which served primarily as a deterrent to competition, was not as good as a valid copyright. Morrison also recognized that this admission undermined her personal investment of time, money and resources into the Mortgage Controller.

In sum, the court does not consider the additional evidence submitted by FCA in this motion to reconsider.[2]

### Merits of FCA's Motions

In evaluating the plaintiff's motions, the court considered the purposes of copyright law.

Article I, section 8 of the Constitution authorizes Congress "to promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." The Supreme Court has stated that "the economic philosophy behind the clause ... is the conviction that encouragement of individual effort by personal gain is the best way to advance public welfare...." *Mazer v. Stein,* 347 U.S. 201, 219, 98 L.Ed. 630, 74 S.Ct. 460 [471] (1954). The author's benefit, however, is clearly a "secondary" consideration *See United States v. Paramount Pictures, Inc.,* 344 [334] U.S. 131, 158, 92 L.Ed. 1260, 68 S.Ct. 915 [929] (1948). "The ultimate aim is, by this incentive, to stimulate artistic creativity for the general public good." *Twentieth Century Music Corp. v. Aiken,* 422 U.S. 151, 156, 45 L.Ed.2d 84, 95 S.Ct. 2040 [2044] (1975).

Thus, the copyright law seeks to establish a delicate equilibrium. On the one hand, it affords protection to authors. as an incentive to create, and, on the other, it must appropriately limit the extent of

---

**2.** The court notes, however, that this additional evidence does not compel a different result in this case.

that protection so as to avoid the effects of monopolistic stagnation. In applying the federal act to new types of cases, courts must always keep this symmetry in mind. *Id.*

*Computer Assoc. Inter., Inc. v. Altai, Inc.,* 982 F.2d 693, 696 (2nd Cir.1992).

FCA has not even attempted to demonstrate how the expression of the idea of prepayment does not merge in the expression chosen. In light of the court's forty-eight page memorandum discussing these and other serious concerns, FCA has fallen far short of demonstrating that the court has erred.

 FCA also complains that the court has picked specific examples of copying argued by FCA to trivialize its copyright infringement claims. While it is true that the court has identified certain examples of alleged "copying" argued by FCA as trivial or frivolous, FCA's minimalist approach of comparing the two products necessarily compelled a comparison of the two products on such a level. As an example, FCA argued that the two products were printed on the same size paper and used tabs to separate the different sections of the products. It is obviously appropriate for the court to comment on the merits of the arguments advanced by a party. As a corollary, there is no requirement that the court's written memorandum and order specifically address and discuss each and every argument advanced by the parties.[3] In denying these motions, the court has considered all of the evidence presented and all of the arguments of the parties in deciding these motions.

While mortgage prepayment is an interesting and potentially worthwhile idea, from the court's understanding of the process, there is, as a practical matter, only a limited amount of information to be conveyed by a product utilizing the idea. Because of the limited number of permutations available, products based upon the idea of mortgage prepayment will necessarily have certain, inescapable similarities.

If the plaintiff's arguments are correct, FCA is essentially entitled to a monopoly on any practical application of the mortgage prepayment idea. Obviously, such a result is inappropriate under copyright law.

In sum, FCA has failed to demonstrate, at least at this point in time, that it is likely to prevail against the defendants at trial. Although the two products convey the same idea in a product that essentially contains the same components, FCA has failed to demonstrate a substantial likelihood of success on the merits.

IT IS THEREFORE ORDERED that FCA's motion for reconsideration (Dk. 15) is denied.

---

**3.** Nevertheless, the court has in this case specifically addressed most of the arguments advanced by the parties.