**NORRIS INDUSTRIES, INC.,**
**Plaintiff-Appellant,**

v.

**INTERNATIONAL TELEPHONE AND TELEGRAPH CORPORATION and David L. Ladd, Register of Copyrights, Defendants-Appellees.**

No. 81–5915.

United States Court of Appeals,
Eleventh Circuit.

Jan. 24, 1983.

Rehearing and Rehearing En Banc
Denied March 18, 1983.

---

Ervin, Varn, Jacobs, Odom & Kitchen, Wilfred C. Varn, Tallahassee, Fla., Harness, Dickey & Pierce, Joseph R. Papp, Charles H. Blair, Sohn A. Sinclair, Birmingham, Mich., for plaintiff-appellant.

Pennie & Edmonds, Robert M. Kunstadt, John E. Kidd, Joseph J.C. Ranalli, New York City, Robert J. Kelly, Tallahassee, Fla., Ronald W. Alice, New York City, for defendants-appellees.

Before RONEY and HATCHETT, Circuit Judges, and WISDOM,* Senior Circuit Judge.

* Honorable John Minor Wisdom, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

1. Design patents may be issued for three years and six months, seven years, or fourteen years as the applicant elects. 35 U.S.C.A. § 173. Copyright protection endures for 50 or 75 years, depending on the date of the work's creation and whether the copyright was sub-

RONEY, Circuit Judge:

This case involves whether wire-spoked wheel covers for automobiles are entitled to copyright protection as opposed to industrial design or some other trade protection. The district court in this copyright infringement suit concluded on summary judgment that the wheel covers are not entitled to copyright protection because they are useful articles without separable features. We affirm.

There are essentially two issues in the case: (1) whether the wheel covers are useful or ornamental and (2) whether, even if useful, there is separable art work that deserves copyright protection. The difference between the copyright protection sought by the plaintiff and protection as an industrial design primarily lies in the length of time and scope of protection given.[1] That the wheel covers might be protected under some other law is not before this panel. The sole issue is whether the wheel covers as presented for registration are copyrightable.

*Background*

In 1975 Norris Industries, Inc. created a design for a wheel cover that simulates a wire wheel and applied to the Copyright Office for copyright registration. The first two applications were rejected. Norris reapplied and pointed out a district court decision that found the design of a lighting fixture to be copyrightable. *Esquire, Inc. v. Ringer,* 414 F.Supp. 939 (D.D.C.1976). The Copyright Office "in line with [its] policy of resolving doubtful cases in favor of registration" then granted copyright registration. In 1977 Norris created a second design. Four applications for copyright registration were submitted and rejected.

sisting on the effective date of the 1976 Act. 17 U.S.C.A. §§ 302–304. While a design patent confers an absolute monopoly, 35 U.S.C.A. § 154, a copyright protects against copying. 17 U.S.C.A. § 106. For comparison of these two forms of protection for intellectual property, *see Schnadig Corp. v. Gaines Manufacturing Co.,* 620 F.2d 1166, 1167–68 (6th Cir.1980).

During this process the D.C.Circuit Court of Appeals reversed *Esquire*. *Esquire, Inc. v. Ringer*, 192 U.S.App.D.C. 187, 591 F.2d 796 (1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). The second wheel cover was rejected by the Copyright Office as a utilitarian article without separable copyrightable aspects on the authority of *Esquire*.[2]

Late in 1980 Norris instituted suit in the Northern District of Florida against International Telephone and Telegraph Corporation (ITT), alleging copyright and patent infringement. Pursuant to 17 U.S.C.A. § 411(a), the Register of Copyrights joined in the suit as a party defendant for the purpose of contesting registrability.[3] ITT then filed suit against Norris in a federal court in California for declaratory judgment as to the validity of Norris' copyrights and patents. On Norris' motion, the California suit was transferred to Florida,[4] and the two suits were consolidated.[5] Both ITT and the Register moved for partial summary judgment on the copyright counts. The district court granted the two motions and declared both the registered and the unregistered copyrights invalid as a matter of law.

### Applicable Copyright Law

As an initial skirmish the parties disagree on whether the Copyright Act of 1909, ch. 320, 35 Stat. 1075, as amended, or the Copyright Act of 1976, 17 U.S.C.A. §§ 101–810, is applicable to the instant case although we are not sure it makes any difference. Norris' first registered copyright was granted before the January 1, 1978 effective date of the 1976 Act and therefore the 1909 Act applied. Norris also applied for registration of the second wheel cover before January 1, 1978. The transitional and supplementary provisions of the 1976 Act provide that registration shall be made in accordance with the Act as it existed on December 31, 1977, where the deposit application and fee were received before January 1, 1978. Copyright Act of 1976, P.L. No. 94–553, § 109, 90 Stat. 2600 (1976). Therefore, we agree with Norris that the Copyright Act of 1909 applies to questions of registrability.

In any event, the legislative history of the Act of 1976 indicates that Congress endorsed the practice of the Copyright Office under the Act of 1909 as it related to registrability of utilitarian articles. The express congressional intent was merely to clarify the statutory distinction between works of applied art eligible for copyright protection and industrial designs ineligible for protection. H.R.Rep. No. 94–1476, 94th Cong. 2d Sess. 54–55, *reprinted in* [1976] U.S.Code Cong. & Ad.News 5659, 5667–68. *See also Esquire, Inc. v. Ringer*, 591 F.2d at 803 (1976 Act and its legislative history express congressional understanding of scope of protection for utilitarian articles).

---

**2.** A second basis for rejection was the Copyright Office's determination that the wheel cover lacked sufficient original authorship to warrant copyright protection. *See L. Batlin & Son, Inc. v. Snyder*, 536 F.2d 486 (2d Cir.), *cert. denied*, 429 U.S. 857, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976). This ground is not urged by appellees on appeal, and our decision based on the utilitarian nature of the wheel cover makes consideration of it unnecessary.

**3.** Section 411(a) provides:

Subject to the provisions of subsection (b), no action for infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute an action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue.

**4.** Under 28 U.S.C.A. § 1404(a) a district court may, for the convenience of parties and witnesses, transfer any civil action to any other district where it might have been brought.

**5.** Rule 42(a) of the Federal Rules of Civil Procedure permits consolidation of actions involving a common question of law or fact.

The language from existing guidelines and regulations of the Copyright Office was incorporated into the 1976 Act. Under this Act the definition of useful article is "an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information" and includes articles that are normally a part of a useful article. 17 U.S.C.A. § 101. The design of a useful article qualifies as a copyrightable pictorial, graphic, or sculptural work only to the extent that the design incorporates features that "can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." *Id.*

Because Congress intended to codify the existing practice of the Copyright Office with respect to the dichotomy between ornamental and useful articles, the 1976 Act and its legislative history are useful aids in interpreting the 1909 Act and regulations adopted pursuant to it. A further reason for noting the identity of treatment of this matter under the 1909 Act and the 1976 Act is to explain why cases arising under the 1976 Act are relevant to this case arising under the 1909 Act.

Important to this litigation is the intended scope of the copyright laws. Congressional authority to provide authors copyright protection for their writings is found in Article I, Section 8 of the Constitution. Without extending copyright protection to the limits of the Constitution, Congress has sought a flexible definition of writings. The 1909 Act gave content to the phrase "writings of an author," Copyright Act, ch. 391, § 4, 61 Stat. 654 (1947), by setting out classes of works eligible for registration including "works of art." *Id.* § 5(g), 61 Stat. 654 (1947).[6]

Under guidelines established by the Copyright Office, a distinction was made between ornamental and useful articles.[7] Or-

---

**6.** The classifications were:
  (a) Books, including composite and cyclopedic works, directories, gazetteers, and other compilations.
  (b) Periodicals, including newspapers.
  (c) Lectures, sermons, addresses (prepared for oral delivery).
  (d) Dramatic or dramatico-musical compositions.
  (e) Musical compositions.
  (f) Maps.
  (g) Works of art; models or designs for works of art.
  (h) Reproductions of a work of art.
  (i) Drawings or plastic works of a scientific or technical character.
  (j) Photographs.
  (k) Prints and pictorial illustrations including prints or labels used for articles of merchandise.
  (l) Motion-picture photoplays.
  (m) Motion pictures other than photoplays.
  (n) Sound recordings.
Copyright Act, ch. 391, § 5, 61 Stat. 654 (1947). The 1976 Act denominates copyrightable subject matter as "original works of authorship" and specifies the following categories:
  (1) literary works;
  (2) musical works, including any accompanying words;
  (3) dramatic works, including any accompanying music;
  (4) pantomimes and choreographic works;
  (5) pictorial, graphic, and sculptural works;
  (6) motion pictures and other audiovisual works; and
  (7) sound recordings.

17 U.S.C.A. § 102(a). The category of pictorial, graphic, and sculptural works is intended to encompass class (f) through (k) of § 5 of the 1909 Act. 1 M. Nimmer, *Nimmer on Copyright,* § 2.08 at 2–74 (1982).

**7.** A regulation drawn in 1910 read as follows:
  *Works of art.*—This term includes all works belonging fairly to the so-called fine arts. (Paintings, drawings, and sculpture.)
  Productions of the industrial arts utilitarian in purpose and character are not subject to copyright registration, even if artistically made or ornamented.
Rules and Regulations for the Registration of Claims to Copyright, Bulletin No. 15 (1910), 8, cited in *Mazer v. Stein,* 347 U.S. 201, 212 n. 23, 74 S.Ct. 460, 467 n. 23, 98 L.Ed. 630 (1954). In response to *Mazer v. Stein,* which recognized that the incorporation of a work of art into a useful article did not foreclose copyright protection, the Copyright Office promulgated the following regulation:
  If the sole intrinsic function of an article is its utility, the fact that it is unique and attractively shaped will not qualify it as a work of art. However, if the shape of a utilitarian article incorporates features, such as artistic sculpture, carving, or pictorial representation, which can be identified separately and are capable of existing independently as a work of art, such features will be eligible for registration.
37 C.F.R. § 202.10(c) (1959), cited in 1 M. Nimmer, *supra,* § 2.08[B][3], at 2–89.

namental articles are "all decorative articles designed primarily to beautify, embellish, or adorn," *Compendium of Copyright Office Practices,* 2.8.1.I.b.1., and if the requirements of originality and creativity are satisfied, are entitled to registration. Useful articles are "designed primarily to serve a utilitarian function," *id.* 2.8.1.I.b.2., and are not entitled to registration, except for features "which can be identified separately and are capable of existing independently as a work of art." 37 C.F.R. § 202.10(c) (1977) [superseded]. As indicated in the above discussion, these regulations were effectively codified in the 1976 Act. 17 U.S. C.A. § 101.

## Discussion

Norris contends first that its wheel covers are ornamental articles, not useful, designed to beautify, embellish, and adorn the wheels of automobiles. The district court held that the wheel covers are utilitarian articles serving as hubcaps to protect lug-nuts, brakes, wheels, and axles from damage and corrosion, as had been determined by the Register in rejecting the copyright application.[8] The court added that the wheel covers were designed to be part of an automobile, which is a useful article.

The district court properly gave some deference to the expertise of the Register in its decision. The Supreme Court has accorded deference to the Register's drawing of the line between ornamental and useful articles. In *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), the seminal case on the copyrightability of works of art used in industry, the Court referred to the agency's construction of the statute in its regulation permitting registration of works of artistic craftsmanship only as to form and not as to mechanical or utilitarian aspects. *Id.* at 212–13, 74 S.Ct. at 467–68. The District of Columbia Circuit has noted the considerable expertise of the Register in defining the boundaries between copyrightable works of art and noncopyrightable in-

dustrial designs and has accorded considerable weight to the refusal of registration. *See Esquire, Inc. v. Ringer,* 591 F.2d at 801. The Fourth Circuit has also expressly deferred to the Register's view on the registrability of utilitarian articles. *See Eltra Corp. v. Ringer,* 579 F.2d 294, 297–98 (4th Cir.1978). The expertise relied on is not technical expertise in the use of the article submitted for registration but expertise in the interpretation of the law and its application to the facts presented by the copyright application. The Copyright Office has been concerned with the distinction between copyrightable and noncopyrightable works of art since the Copyright Act of 1870 characterized copyrightable subject matter as works of fine art. *See Mazer v. Stein,* 347 U.S. at 209–13, 74 S.Ct. at 466–68.

These determinations are routinely made by the Register and are unquestionably related to the substantive area of the agency's business. Therefore, we find no error in the district court's reliance on the Register's opinion that Norris' wheel covers are useful articles as that term is used in the Act. This is not to say that the court should simply accept the Register's decision without question. But our view of the uncontradicted evidence and the graphic description of the wheel cover reveals no abuse of administrative discretion by the Register. *See Esquire, Inc. v. Ringer,* 591 F.2d at 805–06 & n. 28. The court's statement that it took judicial notice of the history of the automobile hubcap, a statement faulted by Norris, was nothing more than an assessment of the evidence in light of common knowledge and does not require a reversal of the court's decision.

■ We therefore hold that the district court was correct in deciding that the wire-spoked wheel covers are useful within the meaning of the copyright law.

---

8. In response Norris pointed out that the design of its wheel cover allowed passage of road debris through it to the wheel of the automobile, and on appeal Norris states that one of its designs lacks the protective backplate. As the Register observes, however, the efficiency of a utilitarian article is irrelevant for copyright purposes.

As useful articles any features that can be identified separately and exist independently of the utilitarian aspects of the article may still be copyrighted as a work of art. 37 C.F.R. § 202.10(c) (1977) [superseded]; 17 U.S.C.A. § 101. Both case law and legislative history indicate that separability encompasses works of art that are either physically severable from the utilitarian article or conceptually severable. 1 M. Nimmer, *Nimmer on Copyright,* § 2.08[B][3], at 2–94—2–96.1 (1982). In a noted case involving physical separability, a simulated antique telephone which encased a pencil sharpener was found to be copyrightable. *Ted Arnold, Ltd. v. Silvercraft Co.,* 259 F.Supp. 733 (S.D.N.Y.1966). Although the pencil sharpener was a useful article, the telephone casing was physically severable and capable of existing independently as a work of art. The court stressed that "the copyrighted article is the simulation of an antique telephone, not the pencil sharpener inside, and not the combination of the two." *Id.* at 734. Similarly, in *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954), the statuettes used as lamp bases were undeniably capable of existing as independent works of art. In fact, the dancing figures without any lamp components were first registered as works of art. *Id.* at 202–03, 74 S.Ct. at 462. The Supreme Court held that works of art do not lose their copyrightability when incorporated into a useful article. *Id.* at 218, 74 S.Ct. at 471.

The district court considered the ornamental and utilitarian aspects of Norris' wheel covers to be inseparable. The court noted that the appearance of a wire wheel was conveyed by the entire wheel cover taken as a whole. The record indicates that Norris sought copyright registration for the entire wheel cover. Even if the arrange-

ment of spokes could be identified separately, however, they are incapable of existing independently. As the Register and the district court observed, the pattern resulting from the placement of spokes is an inseparable component of the wheel cover. The spokes are attached to the rim and to the hub, and once the spokes are removed from their position the pattern ceases to exist. *See SCOA Industries, Inc. v. Famolare, Inc.,* 192 U.S.P.Q. 216, 218 (S.D.N.Y. 1976) (sculptured design of wavy lines, ridges, and troughs in shoe soles cannot be identified nor exist independently as works of art). Nimmer concludes that "[p]hysical separability would presumably mean that after removal of those features which are necessary for the utilitarian function of the article, the artistic features would nevertheless remain intact." 1 M. Nimmer, *supra,* § 2.08[B][3], at 2–96. Norris emphasizes that the spokes and hub can be removed from the backing plate, but the hub and spokes do not constitute the simulated wire wheel for which copyright protection was sought. *See Esquire, Inc. v. Ringer,* 591 F.2d at 806. Nor do the hub and spokes constitute a feature capable of existing independently as a work of art.

Norris argues that, even if not physically separable, the aesthetically pleasing pattern formed by the spokes is nevertheless conceptually separable. Attempting to draw a line between "copyrightable works of applied art and uncopyrighted works of industrial design," the Committee commented on the conceptually separable elements of useful articles such as a carving on the back of a chair and a floral relief design on silver flatware. H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 55, *reprinted in* [1976] U.S. Code Cong. & Ad.News 5659, 5668.[9] These

9.   ... the Committee is seeking to draw as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design. A two-dimensional painting, drawing, or graphic work is still capable of being identified as such when it is printed on or applied to utilitarian articles such as textile fabrics, wallpaper, containers, and the like. The same is true when a statue or carving is used to embellish an

industrial product or, as in the *Mazer* case, is incorporated into a product without losing its ability to exist independently as a work of art. On the other hand, although the shape of an industrial product may be aesthetically satisfying and valuable, the Committee's intention is not to offer it copyright protection under the bill. Unless the shape of an automobile, airplane, ladies' dress, food processor, television set, or any other industrial

items are ornamental, superfluous designs contained within useful objects. *See Scarves by Vera, Inc. v. United Merchants and Manufacturers, Inc.,* 173 F.Supp. 625 (S.D.N.Y.1959) (designs printed on blouses copyrightable); *Syracuse China Corp. v. Stanley Roberts, Inc.,* 180 F.Supp. 527 (S.D.N.Y.1960) (designs on dinnerware copyrightable).

On the other hand, functional components of useful articles, no matter how artistically designed, have generally been denied copyright protection unless they are physically separable from the useful article. *See Esquire, Inc. v. Ringer,* 192 U.S.App.D.C. 187, 591 F.2d 796 (1978), *cert. denied,* 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979) (overall design of lighting fixture not copyrightable); *SCOA Industries, Inc. v. Famolare, Inc.,* 192 U.S.P.Q. 216 (S.D.N.Y.1976) (wavy lines on shoe soles not copyrightable); *Vacheron & Constantin—Le Coultre Watches, Inc. v. Benrus Watch Co.,* 155 F.Supp. 932 (S.D.N.Y.1957), *aff'd in part, reversed on other grounds,* 260 F.2d 637 (2d Cir.1958) (artistically designed watch face not copyrightable). The wire wheel covers in this case are not superfluous ornamental designs, but functional components of utilitarian articles.

In *Kieselstein-Cord v. Accessories By Pearl, Inc.,* 632 F.2d 989 (2d Cir.1980), a case "on a razor's edge of copyright law," 632 F.2d at 990, the Second Circuit upheld the Copyright Office's determination that sculptured belt buckles were eligible for copyright protection. The court viewed their primary sculptural elements as "conceptually separable" from their subsidiary utilitarian function. *Id.* at 993. The belt buckles in *Kieselstein-Cord* had been registered by the Copyright Office as jewelry.

Unlike the shape of useful articles, the form of jewelry has traditionally been considered copyrightable. *See Boucher v. DuBoyes, Inc.,* 253 F.2d 948, 949 (2d Cir.), *cert. denied,* 357 U.S. 936, 78 S.Ct. 1384, 2 L.Ed.2d 1550 (1958). Noting this traditional copyright protection of jewelry, the court stated that its conclusion that the sculptured belt buckles were copyrightable was "not at variance with the expressed congressional intent to distinguish copyrightable applied art and uncopyrighted industrial design." *Kieselstein-Cord,* 632 F.2d at 993.

Wire wheel covers do not fall within any of the categories of fine or applied art which have been traditionally considered copyrightable. The wheel covers do not contain a superfluous sculptured design, serving no function, that can be identified apart from the wheel covers themselves. As we have suggested to be appropriate, the court in *Kieselstein-Cord* gave some deference to the Copyright Office's determination that the belt buckles were copyrightable works of art, noting that "[t]he Copyright Office continually engages in the drawing of lines between that which may be and that which may not be copyrighted." *Id.* at 994. The Copyright Register here refused to register the wheel covers.

The district court did not err in concluding that the wire wheel covers, as useful articles containing no physically or conceptually separable works of art, are not entitled to copyright protection.

AFFIRMED.

product contains some element that, physically or conceptually, can be identified as separable from the utilitarian aspects of that article, the design would not be copyrighted under the bill. The test of separability and independence from "the utilitarian aspects of the article" does not depend upon the nature of the design—that is, even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable. And, even if the three-dimensional design contains some such element (for example, a carving on the back of a chair or a floral relief design on silver flatware), copyright protection would extend only to that element, and would not cover the overall configuration of the utilitarian article as such.

H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 55, *reprinted in* 1976 U.S.Code Cong. & Admin. News 5667, 5668.