**CAROL BARNHART INC., Plaintiff,**

v.

**ECONOMY COVER CORP., Defendant.**

**No. CV 83–5372.**

United States District Court,
E.D. New York.

Sept. 12, 1984.

Blum, Kaplan, Friedman, Silverman & Beran, New York City, for plaintiff.

Bierman, Bierman & Peroff, New York City, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiff Carol Barnhart Inc. (Carol Barnhart) brings this action for copyright infringement pursuant to the Copyright Act (the Act), 17 U.S.C. Section 101 *et seq.* Defendant Economy Cover Corporation (Economy Cover) now moves pursuant to Rule 56(c), Fed.R.Civ.P., for summary judg-

ment on the issue of copyrightability and plaintiff cross-moves for partial summary judgment seeking to strike defendant's first and third affirmative defenses.

## I.

Carol Barnhart was founded in 1982 by its namesake and president. The company produces retail store display wares, mostly human display forms for clothing. Economy Cover is a thirty-year old business that sells display products ranging from retail display forms to wire hangers and plastic garment covers. Economy Cover sells to jobbers and distributors, and occasionally to national chain stores, in the United States, Puerto Rico, Canada, Australia, and the United Kingdom. In contrast, Carol Barnhart sells its products to department stores, distributors, and small retailers. Plaintiff claims to sell "a total concept," including display suggestions.

At issue are four display forms or mannequins of partial human torsos. They are shoulder to waist life-size forms without necks, arms, or backs, made of expandable white styrene. In 1982 the plaintiff's president created these display forms from clay, fabric, and buttons, immediately building aluminum molds for manufacturing the poly-styrene forms (Affidavit of Carol Barnhart, Para. 5). Two of the forms are of female upper torsos, two are male, one each of the male and female torsos are unclad for the purpose of displaying shirts and sweaters. The other two are sculpted with shirts for displaying sweaters and jackets. All the forms are life-like and anatomically correct. The hollow back is designed to hold excess fabric when the garment is fitted on the form. Carol Barnhart's advertising specifies that the forms are packaged in "UPS size boxes for easy shipping and sold in multiples of twelve" (Affidavit of Arthur Zelnicker, Exs. 3A–D).

After making the mold for the shirt-clothed male torso (Men's Shirt), Carol Barnhart produced 3,000 of the forms and began marketing them to department stores. Within four months the company

had $18,000.00 worth of orders. Carol Barnhart then created and manufactured the shirt-clad female torso (Women's Shirt), the naked Men's Chest, and the naked Women's Chest. In December 1982 plaintiff had a booth at the National Association of Display Industries (NADI) trade show and displayed the four forms at issue. In one morning plaintiff took in $35,000.00 worth of orders (Barnhart Affidavit, Para. 8). In June 1983 plaintiff joined NADI. In early 1983 Economy Cover examined Carol Barnhart's four display forms and found no copyright mark (Zelnicker Affidavit, Para. 7; Affidavit of Neil Carpentier, Para. 3). In September 1983 Economy Cover came out with four display forms of partial human torsos called Ladies' Blouse Form, Ladies' Sweater Form, Men's Shirt Form, and Men's Sweater Form (Zelnick Affidavit, Exs. 1A–D). For the limited purpose of this summary judgment motion Economy Cover admits that these four Easy Pin Shell Forms were copied from plaintiff's Women's Chest, Women's Shirt, Men's Chest and Men's Shirt forms respectively, and are substantially similar to Carol Barnhart's forms (Defendant's Statement of Facts pursuant to Local Rule 3(g)). Defendant's forms are sold by the half dozen and have a threaded piece for attachment to a swivel stand.

On September 26, 1983, the plaintiff's president addressed a letter to the directors of NADI objecting to defendant's duplication and sale of the four forms and asking the organization to intervene. Specifically, the president complained that defendant was selling the forms at a lower price, hurting plaintiff's immediate income potential, and flooding the market so as to "create an obsolescence ... in a much shorter time than ... anticipated." (Affidavit of Jordan Bierman, Ex. 1). NADI did undertake to present plaintiff's case to Economy Cover. In a letter dated October 17, 1983 counsel for the defendant pointed out to the Ethics Committee of NADI that Carol Barnhart had no copyright, trademark, or patent protection and could not claim exclu-

sivity (Bierman Affidavit, Ex. 2). On October 17, 1983, Carol Barnhart applied for copyright registration for a number of products, including the four forms at issue here. Plaintiff claimed the forms were sculpture and asked for expedited registration in anticipation of litigation. Copyright registration was granted the same day.[1] Plaintiff immediately sent notice to defendant that the four Easy Pin Shell Forms infringed on its copyright (Plaintiff's Book of Exhibits to Affidavits, Ex. 15) and by letter asked customers to affix copyright labels to previously purchased forms (Zelnicker Affidavit, Ex. 2).

## II.

Economy Cover now moves for summary judgment on the ground that four Barnhart forms are not copyrightable. Defendant maintains that the forms are utilitarian objects and as such are specifically excluded from copyright protection. 17 U.S.C. Section 101. Plaintiff counters that these four display forms transcend function and are sculpture, copyrightable as artistic creations. Accordingly, plaintiff cross-moves for partial summary judgment striking defendant's first and third affirmative defenses.

Initially, plaintiff raises some question as to whether this matter is the proper subject of a summary judgment motion by defendant on the issue of copyrightability, contending that there are genuine issues of material fact inherent in Economy Cover's position. At the same time plaintiff argues that its motion for partial summary judgment on copyrightability raises no issue of genuine fact. To reach this conclusion the plaintiff asks this Court to make an exceedingly fine and rigid reading of Local Rule 3(g) of the Civil Rules of the Eastern District of New York. This the Court will not do. Both parties have submitted the requisite short statements of material facts contended not to be at issue accompanied by affidavits and exhibits. This Court will not abet a battle of Rule 3(g) statements requiring examination and comparison of the

---

**1.** Certificates of Registration Nos. VA 136–777,    VA 136–779, VA 136–780, and VA 136–782.

statements phrase for phrase for technical admissions and controversions. The uncontroverted facts necessary for deciding this motion have been outlined above by the Court.

◼️ Summary judgment is now a recognized means of disposing of issues in copyright infringement litigation. *Hoehling v. Universal Studios*, 618 F.2d 972, 977 (2d Cir.1980). That it is appropriate in instances where copyrightability is at issue is also recognized. *Kieselstein-Cord v. Accessories By Pearl, Inc.*, 632 F.2d 989 (2d Cir.1980). The decision to issue a certificate of copyright registration in the first place is a matter of expert "interpretation of the law and its application to the facts presented by the copyright application" on the part of the Copyright Office. *Norris Industries, Inc. v. International Telephone and Telegraph Corp.*, 696 F.2d 918, 922 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983). This exactly describes the role of the Court in deciding a motion for summary judgment. The facts are before the Court in the shape of the four Barnhart forms and the Economy Cover copies. The Court need only apply the copyright law. Accordingly, this Court deems the issue of copyrightability a proper subject for summary judgment.

### III.

◼️ At the threshold the plaintiff argues that the Copyright Office issuance of certificates of registration for Carol Barnhart's four forms is not merely *prima facie* evidence of copyrightability, but an insurmountable presumption of the validity of the copyrights. Plaintiff misapprehends the law. "It is clear ... that a certificate of registration creates no irrebuttable presumption of copyright validity." *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 908 (2d Cir.1980). Moreover, the evidentiary weight given to the certificate is within the discretion of the Court. 17 U.S.C. Section 410(c). While the Court can rely on the Copyright Register's opinion on the issue of copyrightability, it should not accept it without question. The articles themselves give "mute testimony" on copyrightability, and evidence on the record can overcome the presumption created by the issuance of the certificate. *Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d at 908. The Copyright Office's scrutiny of an article for registration is not like the intense and prolonged scrutiny required for patent and trademark registration. Elements of copyrightability are viewed as largely legal questions and therefore equally within the expertise of the courts. *See,* 2 M. Nimmer on Copyright Section 7.21[A] at 7–150 (1980). The issuance of certificates of registration on the same day as the application is not an indication that the Copyright Office acted with great deliberation and careful consideration when it registered the Carol Barnhart works. Rather, as the application notes that the expedited consideration request is made in contemplation of litigation, it is reasonable to infer that the Copyright Office deferred to the courts the consideration of the copyrightability question. Consequently, this Court does not consider the certificates of registration as insurmountable evidence of copyrightability. They are *prima facie* evidence that can be rebutted.

The Court now turns to the substantive issue of copyrightability. Plaintiff maintains that the four display forms are copyrightable as sculpture. In support of this position plaintiff's counsel has submitted an affidavit from a "visual merchandise manager," or store display supervisor, to the effect that the Barnhart forms are art and have been used as such in store displays (Affidavit of Virginia Rizzo, Paras. 5–9). Plaintiff also presents to the Court photographs of contemporary sculpture depicting the human torso (Plaintiff's Posttrial Surreply, Ex. 1) and asks this Court to conclude that the similarities between the sculptures and the display forms are evidence that the latter is art. In addition, the plaintiff submits what appear to be copied pages of a trade magazine surveying a new trend in attractive torso manequins and showing photographs of a number of them put to imaginative use, includ-

ing a Barnhart form not at issue here (Plaintiff's Book of Exhibits, Ex. 3). Finally, the plaintiff points to a pop art gallery's request to show the four Barnhart forms as artistic recognition (Barnhart Affidavit, Para. 12). Defendant counters that the forms are nevertheless purely utilitarian and excluded from copyright protection by the Act.

The Act provides in relevant part:

"Pictorial, graphic, and sculptural works" include two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, technical drawings, diagrams, and models. Such works shall include works of artistic craftsmanship insofar as their form but not their mechanical or utilitarian aspects are concerned; the design of a useful article, as defined in this section, shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article.

17 U.S.C. Section 101. The Act further defines a useful article as,

an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information. An article that is normally a part of a useful article is considered a "useful article".

*Id.* The statute then provides:

(a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

. . .

(5) pictorial, graphic, and sculptural works; . . . .

17 U.S.C. Section 102(a)(5).

When drafting the Copyright Act of 1976 Congress purposely deleted the Senate-passed Title II, which created a new limited copyright protection for original designs existing as part of a useful article even if inseparable from the utilitarian aspects. H.R.Rep. No. 1476, 94th Cong., 2d Sess. 50, *reprinted in* 1976 U.S.Code Cong. & Ad. News 5659, 5663. The proposed Title II would have provided copyright protection for an exposed middle ground of designs of utilitarian objects in which the designs are not sufficiently separable to stand as independent art works and not sufficiently inventive in their utilitarian function for patent protection. In effect, Title II would have protected original industrial designs. An example of such utilitarian design cited by the House Report was typeface. Noting the administrative difficulties presented by this new category of copyrightable articles and the failure to show that any benefits outweighed the disadvantages of granting such a monopoly, the House Report concluded that Title II should be deleted. *Id.* It was noted, however, that the issue of protecting industrial design was not resolved by the deletion and the report suggested reconsideration by the 95th Congress. Since the 1976 Act, however, no new legislation has addressed the issue.

Nevertheless, as the House Report went on to state, the 1976 revision of the copyright law codified the United States Supreme Court's decision in the landmark case of *Mazer v. Stein,* 347 U.S. 201, 74 S.Ct. 460, 98 L.Ed. 630 (1954). H.R.Rep. No. 1476 at 54, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5667.[2] In that case the Supreme Court held that the sculpture used as the base of an electric lamp was a work of art, existing independent and separate from the utilitarian function of the lamp, and therefore entitled to copyright. The House Report reiterated the principle of *Mazer* that the utilitarian article is not

---

**2.** The decision in the *Mazer* case had been adopted by the Copyright Office in its regula-

tions before incorporation into the statute in the 1976 revision.

copyrightable, but a work of art that embellishes the article or is incorporated into it "without losing its ability to exist independently as a work of art" is copyrightable. *Id.* at 55, *reprinted in* 1976 U.S.Code Cong. & Ad.News at 5668. Moreover, Congress sought to draw "as clear a line as possible between copyrightable works of applied art and uncopyrighted works of industrial design." *Id.* Examples of separable works of art subject to copyright noted in the House Report were graphic designs printed on wallpaper and textiles, and carvings and sculptures ornamenting silverware or furniture. Examples of uncopyrightable designs mentioned in the report were typeface, dresses and automobiles. The report explained that copyright protection under the revision would be extended only to that element in a useful article that can be identified physically or conceptually as separable from the utility of the article. The House Report continued, "The test of separability and independence from the utilitarian aspects of the article does not depend upon the nature of the design—that is, even if the appearance of an article is determined by esthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article as such are copyrightable." *Id.* Thus, the Act differentiates between applied art and utilitarian design, and the legislative history provides the elaborated standard for differentiation.

Since the passage of the Copyright Act of 1976, the courts have been called on to apply the *Mazer* standard to cases that come increasingly close to both sides of the line dividing aesthetically pleasing utilitarian objects from utilitarian objects incorporating separable and independent works of art. The Court is guided in locating that line by two leading cases: *Kieselstein-Cord v. Accessories By Pearl, Inc.*, 632 F.2d 989 (2d Cir.1980), and *Norris Industries, Inc. v. International Telephone and Telegraph Corp.*, 696 F.2d 918 (11th Cir.),

cert. denied, —— U.S. ——, 104 S.Ct. 78, 78 L.Ed.2d 89 (1983). These two cases fall on either side of the line dividing separable and copyrightable art and design that cannot be separated from utility. Both plaintiff and defendant rely on these cases in their arguments to the Court.

In *Kieselstein-Cord* the U.S. Court of Appeals for the Second Circuit held that two sculpted designs for belt buckles, made in either gold or silver, were conceptually separable from the utilitarian function of the buckle and copyrightable as applied art. Calling the sculpted buckle designs jewelry,[3] which is recognized as copyrightable applied art, the Court noted that their judgment was on "the razor's edge of copyright law." 632 F.2d at 990. While the Court acknowledged that belt buckles are fundamentally useful articles, by and large uncopyrightable in their stylings, they concluded that in this instance the buckles were embellished by ornamentation separable from their utilitarian aspects. It was the separable ornamental elements that were held to be copyrightable works of art.

In *Norris Industries* the Eleventh Circuit Court of Appeals held that wire-spoked automobile wheel covers were useful articles without separable sculptural design entitled to copyright. The wheel covers created the aesthetically pleasing look of wire wheels. Nevertheless, the Court concluded that the wheel covers served the useful purpose of protecting various parts of the wheel construction from damage and corrosion and were not purely adornments. Moreover, the wire spoke design was not either a physically or conceptually separable element capable of existing independently as a work of art. The Court articulated and applied the separability test thusly, "The wheel covers do not contain a superfluous sculptured design, serving no function, that can be identified apart from the wheel covers themselves." 696 F.2d at 924. Accordingly, the Court held that the articles were not copyrightable.

---

**3.** The buckles sold at wholesale prices ranging from $147.50 to $6,000.00 depending on the size, style, and precious metal used.

Similarly, the District of Columbia Circuit Court of Appeals in a case that applied the pre-1976 copyright law and regulations held that an original and aesthetically appealing flood light design did not contain a separable work of art entitled to copyright, but was an integration of design and function. *Esquire, Inc. v. Ringer*, 591 F.2d 796 (D.C.Cir.1978), *cert. denied*, 440 U.S. 908, 99 S.Ct. 1217, 59 L.Ed.2d 456 (1979). And in another application of the pre-1976 law, the court in *Vacheron and Constantin-Le-Coultre Watches, Inc. v. Benrus Watch Co., Inc.*, held that the design of a watch face, though original, unusual and jeweled was not a work of art separable from the utility of the watch. 155 F.Supp. 932, 934–35 (S.D.N.Y.1957), *rev'd in part on other grounds*, 260 F.2d 637 (2d Cir.1958).

## IV.

The statute, the legislative history, and the case law are of a single voice. A utilitarian article is not entitled to copyright and as such industrial design is explicitly excluded from such protection. Furthermore, originality, creativity and aesthetics are not determinative of the copyrightability of utilitarian objects. The test is whether there is a physically or conceptually separable work of art embellishing the useful article, for it is that work of art alone that can be copyrighted.

The Court now turns to an examination of the evidence offered by the four Barnhart forms themselves. Carol Barnhart would have the Court begin and end its inquiry with the certificates of copyright registration. As discussed earlier, the Court is permitted its own examination of the works at issue and is not required to defer to the Copyright Office. In weighing the evidentiary value of the certificates of registration the Court notes not only the very limited scrutiny afforded by the same-day grant of registration, but that the applications and registrations denominate the display forms as "sculpture" (Bierman Affidavit, Exs. 3–6). There is no indication, therefore, that the Copyright Office considered the four Barnhart forms as utilitarian articles and applied either its expertise or the *Mazer* standard to its assessment of the copyrightability of the forms.

Scrutinizing the four Barnhart forms the Court first concludes that they are utilitarian articles. To claim that they are purely artistic creations would be disingenuous. They were admittedly created to display clothing, with hollow backs to facilitate draping the garments and initial manufacture geared to mass production. Like the lamps that were the subject of *Mazer*, it is indisputable that the utility of the forms dominates their creation and purpose. They are fundamentally and foremost manequins sold in a commercial market for utilitarian purpose, and thus are useful articles.

The question, then, is not whether the forms are original, the product of creativity, or have aesthetic value, it is whether there are physically or conceptually separable works of art that can exist independently of the function of the four display forms. In *Mazer* the sculpted lamp base was obviously physically separable from the mechanics and function of the electric lamp. On that basis the Supreme Court held that the statuette base was an independent "work of art published as an element in a manufactured article." 347 U.S. at 218, 74 S.Ct. at 471. In the case at hand it is clear that there is no physically separable work of art, no embellishment merely appended to a utilitarian object. One cannot physically separate the shoulders, breasts, or gross shape from the function of the display forms.

The question then becomes whether the shape and other sculpted details and features can be separated conceptually from the body forms and stand alone as works of art. The Court concludes they cannot. Unlike the belt buckles in the *Kieselstein-Cord* case there is no sculptural element that is conceptually severable from the utilitarian element. Rather, in this instance the "aesthetic element is inextricably interwoven with the utilitarian aspect of the article." *Esquire, Inc. v. Ringer*, 591 F.2d at 806. The four forms are realistic repre-

sentations of clothed and unclothed upper torsos. The molding of a collarbone, buttons, or chest muscles on the forms does not create a sufficiently separable conceptual work that can stand independently as sculpture. These details make the article more aesthetically pleasing, but they also improve the display of garments. The sculpting of the collars and buttons on two of the torso forms clearly makes it possible to display sweaters and jackets with ease and efficiency. Likewise, the inclusion of small anatomical details on the nude forms can be said to aid the shopper in visualizing the appearance of the garment on the human body.

In sum, the realistic physical detailing that plaintiff contends raises the display forms to the realm of sculpture are integrated into the function of the article and certainly cannot stand as separate works of art. What stands before the Court are four aesthetically designed utilitarian display forms. The Court can detect no separable work of art entitled to copyright protection. Like the wire wheel covers in the *Norris Industries* case, there is no superfluous sculptured design that serves no function and that can be identified apart from the useful article. 696 F.2d at 924. Furthermore, the Court will not extend copyright protection to an area specifically excluded by the statute. That display designers have found imaginative and attractive uses for the four Barnhart forms is of little consequence. A passing familiarity with department store windows reveals that useful articles are frequently used in creative and eye-catching displays. Such use does not make them art. Nor does display in a museum raise an object to art. The Museum of Modern Art has given its nod of approval to a range of well-designed useful articles from typewriters to toilet brushes.

## V.

The Court concludes that the four Barnhart forms are utilitarian articles not containing separable works of art. The forms in question, therefore, are not copyrighta-

ble. Consequently, Economy Cover's motion for summary judgment on the issue of copyrightability is granted. Count I of plaintiff's complaint is dismissed and plaintiff's cross-motion is denied. As there can be no infringement without a copyright the Court need not address plaintiff's motion for attorney's fees based on infringement.

SO ORDERED.