[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14958

_____

D.C. Docket No. 1:07-cv-02822-TWT


PROGRESSIVE LIGHTING, INC.,

Plaintiff-Appellant,

versus

LOWE'S HOME CENTERS, INC. and BEL AIR LIGHTING, INC.,

Defendants-Appellees.


_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(December 16, 2013)

Before HULL and HILL, Circuit Judges, and MOTZ,* District Judge.

PER CURIAM:

Plaintiff-appellee Progressive Lighting, Inc. appeals the district court's grant of summary judgment to defendants-appellants Lowe's Home Centers, Inc. and Bel Air Lighting, Inc. on its copyright infringement claims. After careful review of the record and the parties' briefs, and with the benefit of oral argument, we affirm.[1]

## I.  FACTUAL BACKGROUND

### A.    The Parties

Plaintiff-appellant Progressive Lighting, Inc. ("Progressive") is a Georgia corporation engaged in the design, creation, and distribution of light fixtures (chandeliers, fans, and lamps). Progressive sells its light fixtures through its own retail outlets (operating under the brand name "Savoy House") and by selling to other retailers.

Defendant-appellee Bel Air Lighting, Inc. ("Bel Air") is a California corporation which manufactures light fixtures and sells its products to retailers. Defendant-appellee Lowe's Home Centers, Inc. ("Lowe's") is a retailer which sells

---

*Honorable J. Frederick Motz, United States District Judge for the District of Maryland, sitting by designation.

[1] Another panel of the court previously denied a motion to dismiss the appeal. We see no reason to disturb the panel's ruling.

light fixtures.  Lowe's is one of Bel-Air's customers and sells Bel-Air's light fixtures in its stores.

## B.      Plaintiff Progressive's Contract with Designer Karyl Pierce Paxton

Karyl Pierce Paxton is a nationally-acclaimed designer of home products, including light fixtures.  Paxton is from New Orleans and her hometown "plays a large role in her creative inspiration."  Around 2000, Paxton signed a contract with Progressive.  That contract gave Progressive exclusive rights to manufacture and market Paxton's interior fixture designs.  Paxton received a five percent commission from the sales of light fixtures she designed for Progressive.  The contract was effective at all times between 2000 and 2008.

## C.      Design of the Cumberland Collection Light Fixtures

According to Paxton, in 2004, she completed hand-drawn designs for a series of light fixtures that would become Progressive's "Cumberland Collection."[2] Paxton intended for the light fixtures in the Cumberland Collection to incorporate the fleur-de-lis, a symbol long-associated with her native New Orleans.  Paxton designed these light fixtures specifically for Progressive.[3]

---

[2]Around the same time, Paxton also created another set of drawings that would become Progressive's "Sonoma Collection."  The Sonoma Collection is not at issue in this case.

[3]The record contains conflicting evidence about who is the original creator of these designs: (1) Paxton; (2) a former employee/part-owner of her design studio, Christopher Sacco; or (3) a Chinese artist working independently of Paxton, Da Young Wang.  Because we determine that Progressive cannot sustain a copyright infringement claim against Bel Air or Lowe's, regardless of who designed the various light fixtures, we do not recount the evidence pertinent to this authorship issue.

In June 2004, Paxton sent the computer-aided version of the fleur-de-lis-inspired light fixture designs to Progressive. She did not send her hand sketches at that time. After Progressive approved the designs, it sent them on to its manufacturer, Light Star. Progressive made no changes to the designs before sending them to Light Star.

## D.    Progressive's Discovery of Similar Light Fixtures at Lowe's

Sometime before early 2006, Progressive learned from its customers that Lowe's was selling light fixtures strongly resembling those in Progressive's Cumberland Collection. A Progressive executive investigated and determined that the customer complaints were accurate.

## E.    Paxton's First Copyright Application

Several months later, on December 13, 2006, Paxton applied for a copyright on all fixture designs in the Cumberland Collection. On her application, Paxton referred to the collective body of work for which she sought copyright protection as "Cumberland/Fleur de Lis Interior & Sonoma Interior." She stated that these collections included "3-Dimensional sculpture" and "2-Dimensional artwork," and she attached design drawings of thirteen different light fixtures.

In the cover letter attached to her application, Paxton's attorney wrote, "[t]he Author has become aware of the unauthorized copying of Author's sculptural

4

works."  Paxton also attached images which she purported were "unauthorized copies" of the works in the Cumberland Collection.

Paxton's attorney also anticipated and addressed potential hurdles to obtaining copyrights.  The attorney wrote, "[t]he Author acknowledges that the underlying works in the January 2005 Collection are useful articles.  However, the January 2005 Collection incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the articles."  The attorney went on to assert that the works were "entitled to copyright registration because [they] contain[] a sufficient amount of separable and creative authorship to support copyright registration."

## F.    The Copyright Office's December 2006 Refusal to Register Letter

A few weeks later, the United States Copyright Office ("Copyright Office") sent a letter to Paxton's attorney in response to Paxton's application.  The Copyright Office wrote, "[w]hile some of the works [in the application] do not appear to contain any separable authorship, we do agree that some works contain ornamentation that may be considered to be separable.  However, after careful consideration, we have determined that the separable ornamentation . . . is not copyrightable."

The Copyright Office explained that it reached this conclusion because "[w]e believe that the placement of preexisting elements around a fixture, in the

5

manner we see here, lacks the authorship necessary to support a claim to copyright." While the Copyright Office was able to register Paxton's two-dimensional drawings of the fixtures, it was not able to register the three-dimensional sculptures created based on those drawings.

## G.     Paxton's Second Copyright Application

Paxton (through counsel) subsequently submitted a second application based on these works. In the cover letter, Paxton's attorney wrote that Paxton "disagrees that the placement of preexisting elements around a fixture, as seen in the January 2005 Collection, lacks the authorship necessary to support a claim to copyright. The Author did not merely place preexisting elements around a lighting fixture." Paxton's attorney also wrote that Paxton "disagrees that the separable ornamentation is not copyrightable."

## H.     The Copyright Office's April 2007 Registration of Paxton's Sculpture Copyrights

On April 9, 2007, the Copyright Office responded to Paxton's second copyright application stating: "[i]t appears we were mistaken in our assumption that the decorative ornamentation on some of these works was preexisting . . . . Based on the fact the ornamentation is original with the author, we can make a registration for the collection as a whole." In its letter, the Copyright Office noted that "[t]his is a collection of individual works which were apparently published as a single unit. Registration has been made because some of the works in the

6

collection would support an independent claim to copyright." However, the Copyright Office also cautioned that, "[b]ased on the reasons mentioned in our letter of December 26, 2006, we believe that some of the works, if considered separately, would not support an independent claim and would not be protected by copyright." The Copyright Office did not state which works were and were not eligible for independent copyright registration. Moreover, Paxton later testified that she did not "have any idea or information" as to which works were and were not eligible for such independent registration. Accordingly, the Copyright Office registered a copyright to Paxton for the "Cumberland/Fleur de Lis Interior and Sonoma Interior" works. The effective date of the copyright was December 18, 2006—the date on which the Copyright Office received Paxton's first application. Thereafter, on May 18, 2007, Paxton assigned to her studio her copyright. That same day, Paxton's studio assigned the copyright to Progressive.

## I.     Progressive's May 29, 2007 Letter to Lowe's

After Progressive acquired Paxton's copyright, Progressive's attorney sent a cease and desist letter to Lowe's. In that letter, Progressive's attorney informed Lowe's that "[y]our company's '6-Light', '3-Light Down' and '6-Light Pot Rack' chandeliers sold under the 'Portfolio' brand are substantially similar (if not identical) in appearance to our client's '6-Light', '3-Light' and '8 Light Pot Rack' chandeliers sold under the 'Cumberland' mark. Thus, Lowe's is infringing on our

client's copyright in its chandelier products." Paxton's attorney informed Lowe's general counsel that "Lowe's is required to cease and desist immediately from any further sale, offer for sale, or display of the infringing products, to account for the number of the accused products sold, to account for the gross revenues it has received to date . . . [,] and to identify the source(s) of those products."

Lowe's forwarded this letter to Bel Air, the manufacturer of the alleged infringing light fixtures. Lowe's did so pursuant to an indemnity provision in the agreement between Lowe's and Bel Air.

## II. PROCEDURAL HISTORY

### A. Bel Air's Complaint for a Declaratory Judgment Against Progressive

After receiving Progressive's letter, on August 28, 2007, Bel Air filed a complaint in the Central District of California against Progressive seeking a declaratory judgment that: (1) Paxton's copyright (since transferred to Progressive) was invalid; (2) Progressive (through Paxton) had committed fraud on the Copyright Office by seeking to and successfully registering a design that she knew was not her own; and (3) Bel Air had not infringed on any copyright of Progressive's. Progressive also brought an affirmative copyright infringement claim and a California state law claim.

### B.    Progressive's Complaint Against Lowe's

8

A few weeks later, on September 10, 2007, Progressive filed its own complaint against Lowe's in the Northern District of Georgia.  Progressive alleged that: (1) Paxton was the author of the light fixture designs comprising the Cumberland Collection; (2) Paxton had obtained a valid copyright for these designs, which she had assigned to Progressive; (3) Lowe's had access to Paxton's designs; and (4) "Lowe's has sold and offered for sale, publically displayed and/or distributed unauthorized, infringing lighting fixtures embodying Progressive Lighting's copyrighted designs."  Based on these allegations, Progressive brought a claim for copyright infringement.  Unlike its earlier letter to Lowe's, where Progressive identified three specific designs from its Cumberland Collection that Lowe's was allegedly infringing, the complaint did not identify any specific light fixture designs from the Cumberland Collection as the bases for the copyright infringement claim.

## C.    Transfer of Bel Air's Complaint to the Northern District of Georgia and Consolidation

Thereafter, the California district court transferred the case commenced by Bel Air to the Northern District of Georgia.  After the transfer, Bel Air answered Progressive's complaint and brought a counterclaim for copyright infringement against Progressive.  Subsequently, the district court consolidated the California action with the one commenced in Georgia.  The case thus proceeded with

9

Progressive and Bel Air both asserting copyright infringement claims against the other.

**D.    Summary Judgment Motions**

After discovery, Bel Air filed a motion for summary judgment. Bel Air did not state whether it was seeking summary judgment only as to Progressive's claim against it, or also as to its own claims against Progressive. Lowe's also filed a motion for summary judgment on Progressive's copyright infringement claim.

**E.    District Court's Summary Judgment Order**

The district court granted Bel Air's and Lowe's motions for summary judgment. The district court began with Progressive's concession that the light fixtures in the Cumberland Collection were useful articles. Although useful articles are generally not subject to copyright protection, Progressive argued that its light fixture designs "incorporate sculptural features that are separable from the utilitarian aspects of the fixture" and therefore were copyrightable. The district court rejected this argument. Acknowledging that a useful article is copyrightable when its creative elements are separable from its utilitarian aspects, the district court determined that separability did not exist in this case. Without separability, Progressive could not obtain copyright protection, and Lowe's and Bel Air were entitled to summary judgment on Progressive's copyright infringement claims.

**F.    Dismissal of Bel Air's Claims Against Progressive**

10

Notably, the district court did not rule on Bel Air's remaining claims against Progressive.  Thereafter, on May 13, 2010, the district court entered an order and stipulation of dismissal stating that Bel Air and Progressive had "reached an agreement on resolution of the remaining claims made in this action, and hereby stipulate to the dismissal of this action."  The dismissal was without prejudice, pursuant to Federal Rule of Civil Procedure 41.

## III.  STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment and draw "all inferences and review all evidence in the light most favorable to the non-moving party."  Hamilton v. Southland Christian Sch., Inc., 680 F.3d 1316, 1318 (11th Cir. 2012) (internal quotation marks omitted).  "Summary judgment is appropriate only if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Id. (internal quotation marks omitted).

## IV.  COPYRIGHT INFRINGEMENT ANALYSIS

To prevail on its copyright infringement claims, Progressive must show: (1) that it "owns a valid copyright in the work"; and (2) "copying by the defendant." Original Appalachian Artworks, Inc. v. Toy Loft, Inc., 684 F.2d 821, 824 (11th Cir. 1982).

**A.    The Effect of Progressive's Certificate of Registration**

11

As a threshold matter, we note that Progressive owns a valid certificate of copyright registration in the works of the Cumberland Collection.   A certificate of registration, however, is not conclusive on the copyright ownership issue.  Rather, the Copyright Act provides that such a certificate "shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).  "Once a plaintiff produces a certificate of registration, the burden shifts to the defendant to establish that the work in which the copyright is claimed is unprotectable . . . ."  Latimer v. Roaring Toyz, Inc., 601 F.3d 1224, 1233 (11th Cir. 2010) (internal quotation marks omitted).

Here, Lowe's and Bel Air ask this Court to conclude that Progressive's certificate of copyright registration does not constitute prima facie evidence of a valid copyright, because the Copyright Office registered the Cumberland Collection with the express caveat that "some individual fixtures in the collection were not protected because they lacked separability and/or originality."  The defendants argue that, in light of this caveat and Progressive's lack of information about which works the Copyright Office intended to protect, the certificate does not establish a presumption of validity as to any individual work in the collection.

We need not decide the effect of Progressive's certificate of copyright registration in this case.  Even assuming that Progressive's certificate did give rise to a presumption of a valid copyright, "this presumption is rebuttable."  Bateman v.

Mnemonics, Inc., 79 F.3d 1532, 1541 n.20 (11th Cir. 1996).  As our sister circuits have held, "[t]o rebut the presumption of validity, an infringement defendant must simply offer some evidence or proof to dispute or deny the plaintiff's prima facie case of infringement."  United Fabrics Int'l, Inc. v. C&J Wear, Inc., 630 F.3d 1255, 1257 (9th Cir. 2011) (internal quotation marks and alterations omitted); see also Palladium Music, Inc. v. EatSleepMusic, Inc., 398 F.3d 1193, 1196 (10th Cir. 2005).  Here, Bel Air and Lowe's rebutted the presumption of validity by offering evidence showing, inter alia, that the works whose copyrightability is at issue were useful articles that did not contain separable copyrightable elements.  We thus turn to whether, absent a presumption of validity, Progressive's light fixtures were entitled to copyright protection.

## B.    Copyrightability of Useful Articles

Under the Copyright Act, "[c]opyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device."  17 U.S.C. § 102(a).  "Works of authorship include," inter alia, "pictorial, graphic, and sculptural works."  17 U.S.C. § 102(a)(5).

The statute defines "pictorial, graphic, and sculptural works" as "two-dimensional and three-dimensional works of fine, graphic, and applied art,

13

photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101. It further provides that "the design of a useful article . . . shall be considered a pictorial, graphic, or sculptural work only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." Id. Other useful articles—defined as articles "having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information," id.—are not entitled to copyright protection. See Norris Indus., Inc. v. Int'l Tel. & Tel. Corp., 696 F.2d 918, 923 (11th Cir. 1983).

Here, there is no dispute that the Cumberland Collection light fixtures are useful articles. Paxton, through counsel, conceded this point when she first applied for copyright registration, and Progressive has not challenged this concession. The copyrightability of Progressive's light fixtures, therefore, depends primarily on whether the fixtures contain copyrightable components that are separable from their utilitarian aspects. There are two types of separability: physical and conceptual. Id. We consider the potential applicability of each type of separability in turn.

## C.    Physical Separability

14

Physical separability exists when, "after removal of those features which are necessary for the utilitarian function of the article, the artistic features . . . nevertheless remain intact." Id. (internal quotation marks omitted); see Mazer v. Stein, 347 U.S. 201, 218, 74 S. Ct. 460, 471 (1954) ("We find nothing in the copyright statute to support the argument that the intended use or use in industry of an article eligible for copyright bars or invalidates its registration."). A physically separable element of a useful article, however, is only entitled to copyright protection where that element otherwise satisfies the statutory requirements for copyrightability, such as originality. See 17 U.S.C. § 102(a).

Before the district court, Progressive limited its physical separability argument to its "bath bar" light fixtures.[4] Specifically, Progressive argued the fleur-de-lis "scroll work" at the bases of these light fixtures "serves no utilitarian feature . . . [,] is merely serving an aesthetic, artistic function [and] . . . . could easily be displayed on a wall or other surface independently of the lighting fixture." As noted by the district court, however, because Progressive did not adequately allege that Bel Air or Lowe's infringed Progressive's bath bar light fixtures, it is not necessary to determine whether the fleur-de-lis scroll designs

---

[4]Intended for use in the bathroom, the Cumberland Collection "bath bar" light fixtures consist of a base with arms extending outward, each arm supporting a light bulb at its end. Decorative scroll work, intended to evoke the fleur-de-lis, adorns each base.

15

were physically separable or sufficiently original to obtain copyrightability.[5]  For

this reason, the district court appropriately granted defendants' motion for

summary judgment with respect to the bath bar fixtures.

## D.    Conceptual Separability

As for conceptual separability, this doctrine refers to "ornamental,

superfluous designs contained within useful objects."  Norris, 696 F.3d at 924.  We

previously noted that examples of conceptually separable works within a useful

article include "a carving on the back of a chair and a floral relief design on silver

flatware."  Id. at 923.  Conceptual separability does not apply to "functional

components of useful articles, no matter how artistically designed . . . unless they

---

[5] Assuming (contrary to a finding made by the district court) that the fleur-de-lis scroll work was sufficiently original so as to be copyrightable, there was no proof of any infringement.  Although a conventional fleur-de-lis is certainly not eligible for copyright protection, a design is not automatically deprived of copyright protection because it derives from a design in the public domain.  See Bucklew v. Hawkins, Ash, Baptie & Co., LLP, 329 F.3d 923, 929 (7th Cir. 2003). Indeed, courts have generally been generous in finding originality where authors contribute some minimal creative touches to conventional designs.  See Baby Buddies, Inc. v. Toys R Us, Inc.,611 F.3d 1308, 1316–18 (11th Cir. 2010) (concluding that although the plaintiff could not obtain copyright protection for the idea of a teddy bear on a pacifier holder, the specific expressive design of *that particular teddy bear*—the shape of its paws, its nose, the proportion of its ears—was original and entitled to copyright protection); see also Satava v. Lowry, 323 F.3d 805 (9th Cir. 2003) (refusing to afford copyright protection to the concept of a glass-in-glass jellyfish sculpture but observing that the designer's original expressive contributions—the distinctive curls of the jellyfish tendrils, the specific hues used in the arrangement—were copyrightable).

That said, assuming that Progressive's designs are entitled to copyright protection at all, they only deserve "thin" protection—they are copyrightable only for their specific stylized rendering of a conventional fleur-de-lis.  In other words, Progressive's copyrights only protect against virtually identical copying.  See Ets-Hokin v. Skyy Spirits, 323 F.3d 763, 766 (9th Cir. 2003).  Progressive did not present evidence of the fleur-de-lis scroll design used by Bel Air, and therefore did not sustain its burden of proving identical copying.

16

are physically separable from the useful article." Id. at 923. In Norris, we held that a wheel cover design that "simulate[d] a wire wheel," id. at 919, did not contain conceptually separable elements because "[t]he wire wheel covers . . . [were] not superfluous ornamental designs, but functional components of utilitarian articles," id. at 924.

Here, Progressive does not point to any individual nonfunctional aspect of a Cumberland Collection light fixture which itself contains copyrightable material. Rather, like in Norris, the expressive aspects of the light fixtures are also functional components of the utilitarian articles. See id. The light fixtures "do not contain a superfluous sculptured design, serving no function, that can be identified apart from the [light fixtures] themselves." See id. Therefore, conceptual separability does not apply.

Progressive's main argument to the contrary is that the overall shapes and appearances of the light fixtures reflect artistic, nonfunctional considerations. However, in Norris, we noted that, under the Copyright Act, "although the shape of an industrial product may be aesthetically satisfying and valuable," this fact alone does not make the entire useful article copyrightable. Id. at 923 n.9 (internal quotation marks omitted). Furthermore, "even if the appearance of an article is determined by aesthetic (as opposed to functional) considerations, only elements, if any, which can be identified separately from the useful article are copyrightable."

Id. at 924 n.9 (internal quotation marks omitted). As we later explained, "a useful article, as a whole, does not receive copyright protection, but any constituent design elements that can be physically or conceptually separated from the underlying article can receive copyright protection." Baby Buddies., 611 F.3d at 1316.

Progressive's argument fails because it asks us to confer copyright protection on a light fixture "as a whole." For example, Progressive contends that "[a] utilitarian 5-light chandelier needs only one rod running from the ceiling to the base and then five arms extending from the base to the light . . . . Although absolutely unnecessary to the function of a lighting fixture, [Paxton] added two curving bars to surround and embrace the rod extending from the ceiling to the base." Progressive does not, however, argue that the extra arms, individually, contain expressive material such that they are copyrightable. Rather, Progressive contends that the existence of the extra arms makes the entire light fixture copyrightable. Our precedent makes clear that an entire useful article cannot receive copyright protection, no matter how many superfluous, aesthetic individual components it has.

Progressive also argues that the district court erroneously failed to consider certain facts during its conceptual separability analysis, specifically: (1) that the Cumberland Collection light fixtures "could work as just a sculptural element in a

18

room"; (2) "Paxton's reputation in the industry"; and (3) "that creative chandelier designs have traditionally been afforded copyright protection."  None of these considerations are relevant in our analysis or change the fact that the light fixtures do not contain separable elements entitled to copyright protection.

## V.  CONCLUSION

For the reasons explained, we affirm the district court's grant of summary judgment to defendants Lowe's and Bel Air on plaintiff Progressive's copyright infringement claims.

**AFFIRMED.**